# United States Court of Appeals
## For the First Circuit

No. 99-1608

THE CLOROX COMPANY PUERTO RICO,

Plaintiff, Appellant,

v.

THE PROCTOR & GAMBLE COMMERCIAL COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lipez, Circuit Judge.

Armando Lloréns, with whom Dora M. Peñagaríciano and McConnell Valdés were on brief, for appellant.

Harold P. Weinberger, with whom Jonathon M. Wagner, Gabrielle L. Gould, Kramer Levin Naftalis & Frankel, LLP, Pedro J. Santa-Sánchez, and O'Neill & Borges were on brief, for appellee.

October 3, 2000

**LIPEZ, <u>Circuit Judge</u>**.  "Más blanco no se puede" (Whiter is not possible) was the advertising tag line used by the defendant, the Proctor and Gamble Commercial Company, to sell its detergent, Ace con Blanqueador (Ace with whitener), in Puerto Rico.  The Clorox Company Puerto Rico cried foul, complaining that no detergent brings out the white like its chlorine bleach when used with a detergent.  Proctor & Gamble modified its pitch, inviting consumers to "Compare con su detergente . . . Más blanco no se puede" (Compare with your detergent . . . Whiter is not possible).  Unimpressed by this change, Clorox sued, alleging, inter alia, that the advertisements were false and misleading in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  After Clorox moved for a preliminary injunction, the district court dismissed the false advertising claim sua sponte.  Concluding that Clorox has stated a claim under § 43(a) of the Lanham Act, we vacate the dismissal and remand to the district court for further proceedings.

**I.**

We present the facts in the light most favorable to Clorox, the party opposing the dismissal of the complaint.  <u>See</u> <u>Langadinos</u> v. <u>American Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000).  In 1989, Proctor & Gamble introduced in Puerto Rico Ace

-3-

con Blanqueador, a powdered laundry detergent that contains a non-chlorine whitening agent described as a "color-safe oxygen bleach" with a patented "activator," the same formula used in powdered Tide with Bleach marketed in the continental United States. In 1997, Proctor & Gamble introduced a liquid version of Ace containing a "compound of high levels of sulfactants and enzymes which function as a whitener and a color enhancer," the same formula used in liquid Tide with Bleach Alternative.

<u>The Original Doorstep Challenge Campaign</u>

Proctor & Gamble conducted some consumer studies in 1997 and determined that an obstacle to obtaining an enhanced market share for Ace con Blanqueador was the public's perception that chlorine bleach was necessary to get clothes white. Using this new information, Proctor & Gamble implemented an advertising campaign to counter the perception of consumers that chlorine bleach was necessary, and to convince them that Ace was a superior option to using a lower-priced detergent in conjunction with chlorine bleach. This "Doorstep Challenge" included a series of television advertisements in which Francisco Zamora, a television celebrity in Puerto Rico, visited women in their homes to ask them about their laundry practices and to elicit their praise for Ace. In the commercials depicting powdered Ace, the overriding theme was that chlorine

bleach was not necessary to get clothes white if washed with Ace. The commercials pitching liquid Ace also emphasized its enhanced whitening capacity, but did not specifically mention chlorine bleach. Each commercial closed with the tag line, "Whiter is not possible," a slogan Proctor & Gamble had been using since powdered Ace arrived on the market in 1989.

For instance, the "Evelyn" commercial for powdered Ace went as follows:

Francisco: Do you use Ace?

She: No . . .

Fco: What is your laundry routine?

She: I put in the three detergents I use, I throw in a bit of chlorine and I let it soak until the next day. I waste a lot of time . . . but to accomplish what I want I have to do it that way.

Fco: I dare you to wash your white garments with Ace and nothing else!

She: Without chlorine?

. . . .

Fco: Without chlorine . . . we're going to wash all these.

She: I don't think so . . .

She: The truth is . . . that's whiteness, that's whiteness! So now I'm going to save money, time . . .

. . . .

-4-

[VISUAL: Whiter is not possible.]

Certified Translation.

### The Promotional Mailing

As part of its campaign to sell Ace, Proctor & Gamble sent a promotional brochure and product sample to consumers in Puerto Rico. The first page of the brochure depicted a bowling ball imprinted with the word "Ace" standing in front of several bowling pins that resembled Clorox bottles. The caption read: "Da en el blanco con una sola tirada," (hit the [white] spot with just one shot). The second and third pages of the brochure contained additional pictures surrounded by punchy statements in Spanish like, "Dare to pass the test. Wash with Ace and nothing else," "Say goodbye to the complications of chlorine and other cleaners," and "Resist the 'bombs.'[1] Put your ACE con Blanqueador to the test." Like the television commercials, the brochure ended with the tag line, "Whiter is not possible!"

### The Modified Campaign

In January 1998, the Clorox Company, which markets in Puerto Rico a brand of chlorine-based liquid bleach called Clorox, sent a letter to Proctor & Gamble complaining that the Doorstep Challenge campaign was false and misleading, and

---

[1] The combination of detergent and chlorine bleach is called "la bomba" in Puerto Rico.

demanding that Proctor & Gamble stop running the television advertisements. Although Proctor & Gamble would not alter the theme of its advertising, it agreed to soften the tag line by adding the qualification, "compare with your detergent," before the phrase "whiter is not possible."[2]

The qualification did not satisfy Clorox. In March 1998, Clorox filed this lawsuit, alleging in its complaint violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c), the Federal Trade Commission Act and regulations, 15 U.S.C. § 45(a), Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141, and regulations issued by the Puerto Rico Department of Consumer Affairs ("DACO"). Clorox later amended the complaint by dropping the claims pled under the FTC Act and the FTC and DACO regulations, and adding a claim under Article 1802 predicated solely on Proctor & Gamble's alleged violations of those laws and regulations.[3] Proctor & Gamble moved to dismiss all of the claims except the Lanham Act claim.

---

[2]     For advertisements depicting liquid detergent, the new tag line read, "Compare con su detergente líquido . . . Más blanco no se puede." (Compare with your liquid detergent . . . Whiter is not possible).

[3]     Presumably, Clorox did this because it worried that the FTC Act and FTC and DACO regulations do not authorize private rights of action.

Clorox then sought leave to amend the complaint again to add Proctor & Gamble's alleged violation of the Lanham Act as another predicate for its Article 1802 claim.[4]

Clorox sought to permanently enjoin Proctor & Gamble from "making any claims that Ace gets clothes 'the whitest possible,' without the use of Clorox." (Emphasis in original). Additionally, Clorox sought damages and attorneys' fees under § 43(a) of the Lanham Act.[5] Finally, Clorox moved for a preliminary injunction on its Lanham Act claim. In connection with the motion for a preliminary injunction, the parties conducted document production and depositions and submitted to the court relevant evidentiary materials, including consumer surveys, statements of experts, and the testimony of various witnesses. The district court did not hear oral argument.

In March 1999, while Clorox's motion to amend its amended complaint and its motion for preliminary injunction were pending, the district court granted Proctor & Gamble's motion to

---

[4] This Second Amended Complaint also assailed a new series of advertisements, first aired by Proctor & Gamble in September 1998, depicting the celebrity interviewer Zamora wrapped in chains and exclaiming, "Free yourself from chlorine bleach!"

[5] Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), allows for the recovery of damages and attorney's fees for false advertising in violation of § 43(a). See 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:40 (4th ed. 1997).

dismiss both the Dilution Act and Article 1802 claims. Additionally, the district court dismissed the Lanham Act claim sua sponte. This appeal followed, limited to the dismissal of the Lanham Act and Article 1802 claims.

## II.

### A. The Sua Sponte Dismissal

We review de novo the district court's dismissal of Clorox's Lanham Act claim pursuant to Fed. R. Civ. P. 12(b)(6). See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998). We will affirm the dismissal of the complaint if, and only if, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff, the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). That is, the complaint is properly dismissed only when the allegations are such that "the plaintiff can prove no set of facts to support [the] claim for relief." Rockwell v. Cape Cod Hosp., 26 F.3d 254, 260 (1st Cir. 1994).

Courts must move cautiously when dismissing a complaint sua sponte. See, e.g., Baker v. Cuomo, 58 F.3d 814, 818 (2d Cir. 1995). Although it is occasionally appropriate for a district court to "note the inadequacy of the complaint and, on its own initiative, dismiss the complaint[,] a court may not do

so without at least giving plaintiffs notice of the proposed action and affording them an opportunity to address the issue." Wyatt v. City of Boston, 35 F.3d 13, 14-15 (1st Cir. 1994) (quoting Literature, Inc. v. Quinn, 482 F.2d 372, 374 (1st Cir. 1973)).  See also Perez v. Ortiz, 849 F.2d 793, 797 (2d Cir. 1988) (noting that "the general rule is that a 'district court has no authority to dismiss a complaint for failure to state a claim upon which relief can be granted without giving the plaintiff an opportunity to be heard'").  Clorox was given no opportunity to argue the validity of its claim to the district court.  Moreover, the court's dismissal was done in the face of Proctor & Gamble's acknowledgment that "the complaint states a claim under the federal false advertising statute[--]Section 43(a) of the Lanham Act."  Clorox had no reason to suspect, therefore, that its Lanham Act claim was in danger of dismissal.

There are limited exceptions to the general rule barring dismissal without notice, applicable to frivolous claims or to claims whose defects could not be cured by amendment.  See Wyatt, 35 F.3d at 15 n.1 (noting that reversal of a sua sponte dismissal without notice may not be "mandated if amendment [of the complaint] would be futile or if it is patently obvious that the plaintiff could not prevail"); Street v. Fair, 918 F.2d 269,

-9-

272 (1st Cir. 1990) (per curiam) (noting that procedural protections may be unnecessary when the court dismisses in forma pauperis actions as frivolous). As our discussion _infra_ indicates, Clorox's Lanham Act claim does not fall within any of these exceptions.

Recognizing the procedural vulnerability of the court's dismissal, Proctor & Gamble points out that Clorox submitted substantial evidence in conjunction with its complaint and its preliminary injunction motion--evidence that the district court presumably could have used to convert, sua sponte, a motion to dismiss into a motion for summary judgment. _See_ 5A Charles Alan Wright & Arthur R. Miller, _Federal Practice and Procedure_ § 1366, at 470 (West Supp. 2000) (explaining that it may be appropriate for a court to convert a motion to dismiss into one for summary judgment sua sponte when parties offer material outside of the pleadings in conjunction with a motion to dismiss). Proctor & Gamble now urges us to treat the district court's ruling as a summary judgment, inviting us to affirm on any alternative ground supported by a full examination of the record. _See_ _Frillz, Inc._ v. _Lader_, 104 F.3d 515, 516 (1st Cir. 1997) (stating that we may "affirm an entry of summary judgment on any alternative ground made manifest by the record").

There are several problems with this approach. Even if we were to agree that it would have been appropriate for the district court to consider material outside the pleadings in connection with its sua sponte dismissal of the Lanham Act claim, this is not what the district court did. The court's opinion and order sets forth its analysis in a section entitled "Motion to Dismiss," which it prefaces with a discussion of the 12(b)(6) motion to dismiss standards. The court expressly grants "Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)." More significantly, the district court did not conduct the searching review of the record necessary to rule on summary judgment. See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 18-19 (1st Cir. 1992) (stating that the test for deciding whether a district court's ruling is a 12(b)(6) dismissal or an entry of summary judgment is "whether the court actually took cognizance of" supplementary materials). The district court looked only to the face of the complaint. It did not purport to dismiss Clorox's Lanham Act claim based on an evaluation of the record as a whole.

Moreover, Proctor & Gamble's suggestion fails to address the fundamental problem with the district court's sua

sponte actions: the failure to give Clorox notice and an opportunity to be heard. Even if the district court had converted the motion to dismiss into a motion for summary judgment--which it did not--such conversion usually requires that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion." Fed. R. Civ. P. 12(b). Although we do not "mechanically enforce the requirement of express notice of a district court's intention to convert a Rule 12(b)(6) motion into a motion for summary judgment," we do guard against allowing such a conversion where it would come as a "surprise" or be "unfair" to the party against whom judgment is rendered. Chaparro-Febus v. International Longshoremen Ass'n, Local 1575, 983 F.2d 325, 332 (1st Cir. 1992). In light of Proctor & Gamble's acknowledgment that the complaint stated a claim under § 43(a) of the Lanham Act, the district court's conversion without notice would have been both surprising and unfair.

It would only compound the unfairness to Clorox if we accepted the invitation of Proctor & Gamble to indulge the fiction that the district court's ruling was a summary judgment determination and then affirm on any basis that seems appropriate. Clorox has now tailored its appellate advocacy to address the legal standards that it reasonably expected would

govern this appeal--i.e., the standards governing review of a 12(b)(6) dismissal. Clorox has never had an adequate opportunity to argue the relationship between the record evidence and its Lanham Act claim. Also, it would be imprudent to evaluate the voluminous filings in this case in light of the summary judgment standard without advocacy from both parties on the relationship between this evidence and the legal standards governing liability under the Lanham Act.

Our refusal to review the entire record based upon summary judgment standards does not mean, however, that we will not examine any of the filings in this case. The record includes hundreds of pages of exhibits appended to the various complaints and submitted in support of motions to dismiss and motions for and against a preliminary injunction. These exhibits include the full text of the advertising copy, internal company memoranda, letters exchanged between the parties, market research and consumer survey data, and declarations and deposition testimony of experts and other witnesses. Although much of the evidence contained in the record is out-of-bounds in reviewing a 12(b)(6) dismissal, it is well-established that in reviewing the complaint, we "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint,

without converting the motion into one for summary judgment." Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996) (citing Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (explaining that the main problem of looking to documents outside the complaint--lack of notice to plaintiff--is dissipated "[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint")). "Were the rule otherwise, a plaintiff could maintain a claim . . . by excising an isolated statement from a document and importing it into the complaint . . . ." Id.; see also Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."). Accordingly, in determining whether Clorox has stated a claim for relief for false advertising, we read the allegations in the complaint in light of the full text of the advertising copy contained in the record. We limit our evaluation of material outside the complaint to the advertisement copy because that is the only material we deem "integral" to assessing the sufficiency of the allegations in the complaint.

In closing our discussion of the sua sponte dismissal, we must reiterate that basic fairness and sound prudential

-14-

reasons underlie our insistence on the involvement of the parties in any dismissal. "[A]dequate notice helps the court secure a just determination, by giving parties moved against the opportunity to present their best arguments in opposition." Perez, 849 F.2d at 797 (internal citations and quotations omitted). This case aptly illustrates the wisdom of that insistence. The relationship between the allegations in the complaint and the Lanham Act false advertising claim is complex and contested. By dismissing Clorox's Lanham Act claim without the benefit of the parties' advocacy in addressing these complex issues, the district court misunderstood the relationship between the allegations in Clorox's complaint and the relevant legal standards. We turn now to those standards.

## B. The Lanham Act False Advertising Claims

The false advertising prong of the Lanham Act provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

. . . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or

-15-

> another person's goods, services, or
> commercial activities,
>
> shall be liable in a civil action by any
> person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a).[6]  A plaintiff can succeed on a false advertising claim by proving either that an advertisement is false on its face or that the advertisement is literally true or ambiguous but likely to mislead and confuse consumers.  See Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997); Castrol, Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993); Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 13 (7th Cir. 1992).  If the advertisement is literally false, the court may grant relief without considering evidence of consumer reaction.  See United Indus. Corp. v. Clorox Co., 140 F.3d 1175,

---

[6]    The elements of a false advertising claim under the Lanham Act are: (1) a false or misleading description of fact or representation of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading statement, either by direct diversion of sales from itself to defendant or by a lessening of goodwill associated with its products.  See Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997); see also Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc., 19 F.3d 125, 129 (3d Cir. 1994); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:24  (4th ed. 1997).

1180 (8th Cir. 1998). In the absence of such literal falsity, an additional burden is placed upon the plaintiff to show that the advertisement, though explicitly true, nonetheless conveys a misleading message to the viewing public. See Sandoz Pharms. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 228-29 (3d Cir. 1990). To satisfy its burden, the plaintiff must show how consumers have actually reacted to the challenged advertisement rather than merely demonstrating how they could have reacted. See id. at 229.

Clorox's amended complaint alleged that Proctor & Gamble's original and modified Doorstep Challenge television campaigns, as well as the promotional brochure, were false and misleading. Specifically, Clorox alleged that the Doorstep Challenge advertisements and promotions conveyed the false and misleading message to the Puerto Rican public that Ace con Blanqueador gets clothes as white or whiter than a detergent used with chlorine bleach.[7] Clorox also alleged that the name

---

[7] Significantly, the Lanham Act false advertising claim was directed at the alleged comparison between Ace and chlorine bleach. Unlike the Dilution Act claim, therefore, the false advertising claim is not directed at a dilution, disparagement, tarnishment, or diminishment of Clorox's brand name. That is, Clorox alleged that it was false and misleading to claim the superiority of Ace over chlorine bleach, generically, not Clorox bleach, in particular. To the extent that such false advertising would lead to a reduction in market share for Clorox as the leading producer of chlorine-based "cleansing bleach" in Puerto Rico (Clorox alleged that it controls 74% of the Puerto

-17-

"Ace con Blanqueador" is literally false with respect to Ace liquid detergent.

The district court's analysis of the Lanham Act claim consisted of two paragraphs in which it reasoned that Clorox "has failed to state a claim" under the Lanham Act because it could not establish that Proctor & Gamble's advertisements contained false or misleading statements. In particular, it found that the tag line appearing in the modified campaign commercials, "Compare with your detergent . . . Whiter is not possible," was not false because it compared Ace only to other detergents, not to detergents used with chlorine bleach. The court also stated that, "Ace's comparison claim" was not actionable under the Lanham Act because it was "mere puffing."

The district court's dismissal was erroneous for several reasons. First, it ignored many of the allegations on the face of the complaint. It did not address Clorox's allegations directed at the advertisements in the original Doorstep Challenge campaign, or the promotional brochure, nor did it address Clorox's allegation that the name "Ace con Blanqueador" as applied to the liquid detergent is literally

Rican market), Clorox may be in a position to show that it was significantly damaged by false claims of superiority with respect to chlorine bleach.

false. Second, it applied an overly-restrictive view of the requirements for pleading a false advertising claim under the Lanham Act, dismissing the allegation that the modified campaign was not false or misleading simply because it found the tag line, read in isolation, to be literally true. Finally, the district court erred in concluding that Clorox's allegations were directed at non-actionable puffery. We analyze Clorox's various allegations de novo, see Beddall, 137 F.3d at 16, focusing on (1) the allegations of literal falsity, (2) the allegations of misleading advertising, and (3) the concept of "puffery."

### 1. Claims of Literal Falsity

Clorox challenged two features of Proctor & Gamble's advertising campaign as literally false. First, Clorox alleged that the television commercials that aired in the original and modified campaign claimed that Ace gets clothes as white or whiter than chlorine bleach. According to Clorox, that claim is literally false because tests prove that chlorine bleach whitens better than detergent used alone. Second, Clorox alleged that the name, "Ace con Blanqueador," is literally false with respect to Ace liquid detergent because it falsely suggests that Ace liquid contains whitener or bleach.

### a. The Television Advertisements

Whether an advertisement is literally false is typically an issue of fact. See Mead Johnson & Co. v. Abbott Labs., 209 F.3d 1032, 1034 (7th Cir. 2000) (denying petition for rehearing and amending prior panel opinion). At least two factual questions must be answered in evaluating the accuracy of any particular advertisement. First, a factfinder must determine the claim conveyed by the advertisement. See United Indus. Corp., 140 F.3d at 1181 (applying clearly erroneous standard to review of district court's factual determination regarding the claim conveyed by an advertisement for roach bait); Johnson & Johnson v. GAC Int'l, Inc., 862 F.2d 975, 979 (2d Cir. 1988). Once the claim made by the advertisement has been determined, the factfinder must then evaluate whether that claim is false. See Castrol, 987 F.2d at 944.

In the case at hand, the parties focus their attention solely upon the first of these factual determinations. The complaint asserts that in head-to-head whitening tests, Clorox achieved "by far, superior results" to Ace. Clorox also emphasizes that "Ace's own boxes" state that in certain cases, for better results, the consumers must use chlorine bleach. In reviewing the motion to dismiss, we therefore assume as true that chlorine bleach whitens better than Ace and that a contrary claim would be literally false. The primary dispute between the

-20-

parties is not which product whitens better,[8] but rather whether any of Proctor & Gamble's advertisements make a claim of whitening superiority over chlorine bleach.

Although factfinders usually base literal falsity determinations upon the explicit claims made by an advertisement, they may also consider any claims the advertisement conveys by "necessary implication." See Southland Sod Farms, 108 F.3d at 1139; Rhone-Poulenc Rorer, 19 F.3d at 129. A claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated. For instance, a factfinder found that an advertisement that claimed a motor oil provided "longer engine life and better engine protection" without explicitly mentioning competitors nonetheless drew a comparison by necessary implication vis à vis those competitors. See Castrol, 987 F.2d at 941, 946. This is not to say, however, that all messages implied by an advertisement will support a finding of literal falsity by a factfinder:

> The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the

---

[8] Indeed, Proctor & Gamble does not challenge on appeal Clorox's assertion that chlorine bleach in combination with a detergent gets clothes whiter than its Ace detergent.

> apparent conclusion, however, the less likely it is that a finding of literal falsity will be supported. Commercial claims that are implicit, attenuated, or merely suggestive usually cannot fairly be characterized as literally false.

United Indus. Corp., 140 F.3d at 1181. Similarly, a factfinder might conclude that the message conveyed by a particular advertisement remains so balanced between several plausible meanings that the claim made by the advertisement is too uncertain to serve as the basis of a literal falsity claim, though even in that case it could still form the basis for a claim that the advertisement is misleading. See id. at 1182; Abbott Labs., 971 F.2d at 14.

In reviewing the dismissal in the present case, however, we are not required to determine what claim was actually conveyed by the advertisements because we are not factfinders. Instead, we must evaluate whether the complaint, as supplemented by the advertising copy, alleges facts that would allow a rational factfinder to conclude that Proctor & Gamble's advertisements make a superiority claim either explicitly or by necessary implication. We must draw all reasonable inferences as to the claim made in the advertisements in favor of Clorox. See Southland Sod Farms, 108 F.3d at 1139; see also Rhone-Poulenc Rorer, 19 F.3d at 129; U.S. Healthcare, Inc. v. Blue Cross, 898 F.2d 914, 922 (3d Cir. 1990). Dismissal

-22-

would only be proper if no reasonable factfinder could conclude that the advertisements, viewed in the light most favorable to Clorox, make a claim of whitening superiority for Proctor & Gamble's product.

We conclude that Clorox has stated a claim that Proctor & Gamble's original Doorstep Challenge commercials are literally false. These commercials juxtapose a tag line, "Whiter is not possible," with images of consumers who normally used bleach to achieve white clothes and who are favorably impressed by the results obtained from using Ace alone. The overall theme of the commercials is that bleach is unnecessary if clothes are washed with Ace, and, in fact, many of the consumers visited by Zamora are congratulated at the end of the commercials for passing "the Ace whiteness challenge without chlorine." Some of the commercials also suggest that eliminating chlorine from the laundry process will save consumers time or money, or curtail the negative side effects of washing clothes with chlorine. A factfinder could reasonably conclude that, viewed in their entirety, these advertisements claim that Ace is equal or superior in whitening ability to a detergent and bleach combination.

The modified Doorstep Challenge campaign continued the same visual comparisons, as well as the congratulatory comments

for passing the "Ace whiteness challenge without chlorine," but added the words "Compare your detergent" to the "Whiter is not possible" tag line shown at the bottom of the screen at the end of the commercials. Although this change may render the comparative claim of the advertisements more ambiguous, we nonetheless conclude that it remains reasonable to interpret these advertisements as making by necessary implication a superiority claim for Ace over chlorine bleach. Consequently, the court erred in dismissing Clorox's literal falsity claims with respect to both Doorstep Challenge campaigns.

### b. The Name "Ace con Blanqueador"

Clorox also alleged that the name, "Ace con Blanqueador," as applied to liquid Ace, is literally false. According to Clorox, the word "blanqueador" implies that liquid Ace has whitening capabilities like bleach. Clorox alleged that this is literally false because in its liquid form Ace does not contain bleach or whitening agents. Instead, it contains only a "color enhancer." Clorox emphasizes that liquid Ace uses the same formula as "Tide with Bleach Alternative" whose name, unlike "blanqueador," clearly signifies the absence of bleach. Proctor & Gamble responds that "blanqueador" means "whitener," and that the name cannot be literally false because tests show

that the agents added to liquid Ace produce greater whiteness than detergents without those agents.

Clorox's allegations about the use of the name "Ace con Blanqueador" for the liquid detergent state a claim for literal falsity. Although "blanqueador," meaning "whitener," is broad enough to encompass both bleach and non-bleach whitening agents, the question remains whether liquid Ace is properly described as containing "whitening agents" of any sort. Clorox has alleged that it is not, insisting that Ace's ingredients are properly termed "color enhancers." Although the distinction between a "whitening agent" and a "color enhancer" eludes us, we must credit that allegation in this appeal from a 12(b)(6) dismissal. If Clorox succeeds in proving that liquid Ace contains only an "enhancer," rather than a "whitener," and if it further establishes the other elements of a false advertising claim, <u>see</u> <u>supra</u> note 6, it will be entitled to relief under the Lanham Act because Proctor & Gamble's designation of Ace liquid detergent as "Ace <u>con Blanqueador</u>" would be literally false.

### 2. Claims of Misleading Advertising

In addition to its claims of literal falsity, Clorox has alleged in its complaint that the Ace advertising campaign, even if true or ambiguous, makes an implied claim that is misleading to consumers. This second theory of recovery under

the Lanham Act is independent of a literal falsity theory. <u>See,</u>
<u>e.g.</u>, <u>Coca-Cola, Co.</u> v. <u>Tropicana Prods., Inc.</u>, 690 F.2d 312,
317 (2d Cir. 1982). Unlike the requirements of a claim of
literal falsity, the plaintiff alleging a misleading
advertisement has the burden of proving that a substantial
portion of the audience for that advertisement was actually
misled. <u>See Rhone-Poulenc Rorer</u>, 19 F.3d at 134 (citing <u>U.S.</u>
<u>Healthcare</u> v. <u>Blue Cross</u>, 898 F.2d 914, 922 (3d Cir. 1990)). An
advertisement's propensity to deceive the viewing public is most
often proven by consumer survey data. <u>See</u> <u>id.</u> at 129-30.[9]
Clorox appended to the amended complaint a consumer survey
prepared by David Whitehouse of Gaither International/Puerto
Rico, Inc.[10] The survey consisted of a series of open-ended

---

[9] In some circuits, if the defendant "intentionally set
out to deceive the public," using "deliberate conduct" of an
"egregious nature" in light of the advertising culture of the
marketplace in which the defendant competes, a presumption
arises that customers were, in fact, deceived, dispensing with
the need for the plaintiff to commission a consumer survey. <u>See</u>
<u>Rhone-Poulenc Rorer</u>, 19 F.3d at 131-32; <u>Johnson & Johnson*Merck</u>
<u>Consumer Pharms. Co.</u> v. <u>Smithkline Beecham Corp.</u>, 960 F.2d 294,
298-99 (2d Cir. 1992); McCarthy § 27:58. Because Clorox has
proffered a consumer survey, we need not decide whether Clorox's
allegations that Proctor & Gamble intentionally acted in bad
faith creates a presumption of consumer deception.

[10] In addition to its own survey, Clorox contends that
Proctor & Gamble's market research, commissioned three months
into the Doorstep Challenge campaign, demonstrates that
consumers have been misled.

questions followed by several follow-up probes. In reliance on the survey, the complaint alleges that:

> In open-ended questions, 35% of respondents of its scientifically valid survey responded that the main message of the Doorstep Challenge Campaign was that, with ACE, there is no need to use other products for maximum whitening performance. In addition, when the respondents were asked if 'the Detergent in the Ad (ACE) Leaves Clothes as White or Whiter than If One Uses Bleach,' 47% totally agreed and 20% somewhat agreed with that statement. Plainly, the Doorstep Challenge Campaign has been amply shown to be likely to cause consumer deception.

Clorox has also alleged in its complaint that "in its promotional activities and advertisements," Proctor & Gamble "deceiv[ed] and confus[ed] the public, causing consumers to wrongly believe they are buying a detergent that possesses the same qualities and characteristics as a detergent used with CLOROX."

The court was required to credit Clorox's allegations. It could not conduct its own evaluation of the advertising copy because whether advertising is misleading depends on "what message was actually conveyed to the viewing audience." Smithkline Beecham Corp., 960 F.2d at 298; see also Rhone-Poulenc Rorer, 19 F.3d at 129. In deciding whether a message is "misleading," the message conveyed is discerned by "public reaction," not by judicial evaluation. McCarthy § 27:56; see

-27-

also <u>Castrol</u>, 987 F.2d at 947 ("[I]n cases where the issue is whether a statement . . . has a tendency to mislead, confuse, or deceive . . . [,] the court's reaction is at best not determinative and at worst irrelevant.") (internal quotation marks omitted).  That is, absent some other defect in its proof of the elements of a false advertising claim, <u>see</u> <u>supra</u> note 6, if Clorox's consumer survey data (or Proctor & Gamble's own market research data) shows that the advertisements "deceive[d] a substantial portion of the intended audience," <u>U.S. Healthcare</u>, 898 F.2d at 922, Clorox is entitled to relief under the Lanham Act.[11]  Hence, the claims asserting misleading advertising were improperly dismissed.[12]

---

[11]    Although we have quoted Clorox's allegations relying on the results of its own consumer survey, we do not mean to suggest that a Lanham Act plaintiff must identify the particular consumer survey that will be used to support its allegations to survive a motion to dismiss.  For the purposes of a motion to dismiss, a court must credit the type of allegations of misleading advertising set forth here.  Obviously, if confronted with a motion for summary judgment, the plaintiff can no longer rest on the allegations in the complaint.

[12]    Proctor & Gamble vigorously disputes the validity of Clorox's survey.  In opposing Clorox's motion for a preliminary injunction, Proctor & Gamble supplied its own expert, Dr. Michael Rappeport, who testified that the responses to the open-ended questions in Clorox's survey do not "by any stretch of the imagination" show that the commercial's message was that there is no need to use products other than Ace con Blanqueador for maximum whitening performance.  Dr. Rappeport concluded, moreover, that the methodology used to conduct the survey was "so biased as to have no value whatsoever."  Proctor & Gamble also argues that Clorox's own expert, Whitehouse, failed to

Proctor & Gamble offers one last defense of the court's ruling, pointing to Mead Johnson & Co. v. Abbott Labs., 201 F.3d 883, modified by, 209 F.3d 1032 (7th Cir. 2000) as a case that stands for the proposition that "a consumer survey could not be used to show that an advertisement that is clear and unequivocal on its face otherwise conveyed a misleading message." According to Proctor & Gamble, its tag line in the modified campaign "clearly and unequivocally" does not compare Ace with Clorox and, therefore, Mead Johnson prevents Clorox from using a survey to prove that a comparison was made. We need not decide whether we would agree with Mead Johnson in a factually similar case. This case is of a different order.

Mead Johnson addressed whether a label was misleading in claiming its product to be the "1st Choice of Doctors." See 201 F.3d at 883-84. The plaintiff argued that its surveys demonstrated that consumers interpreted "first" to mean that "more than 50%" of doctors preferred that brand rather than

vouch for the survey results when asked about it in his deposition. Finally, Proctor & Gamble insists that even if the survey were valid, it tests only one advertisement, and therefore could not support Clorox's claim that the whole advertising campaign was misleading. We express no view on the merits of Proctor & Gamble's arguments. The "probative value of a consumer survey is a highly fact-specific determination," Rhone-Poulenc Rorer, 19 F.3d at 134 (quotations omitted). It is not the type of determination that we may make as a matter of law upon review of a motion to dismiss.

-29-

interpreting "first" to mean that a plurality of doctors preferred the brand.  See id. at 884-85.  These distinctions were important because, though the latter interpretation of the label was true, the former was false.  See id. at 884.

After first finding the plaintiff's survey "misleading if not meaningless," the court identified a "deeper problem: the use of a survey in the first place."  Id. at 885.  Although agreeing that surveys are "accepted ways to probe for things such as confusion about the source of goods, for confusion depends on the effect of a phrase or trade dress on the consumer," the court reasoned that surveys should not be used "to determine the meaning of words, or to set the standard to which objectively verifiable claims must be held."  Id. at 886.  Based upon these objections, the court held that the survey could not "support a conclusion . . . that [the message conveyed by the advertisement] either was false or implied a falsehood."  Mead Johnson, 209 F.3d at 1034.

Procedurally, Mead Johnson is different than this case.  That court's evaluation of the merits of the survey was based on a record established during a three day hearing on a motion for a preliminary injunction, which was granted.  See Mead Johnson, 201 F.3d at 884.  As noted, see supra note 12, it would not be appropriate to undertake a similar analysis of the Clorox survey

-30-

on the limited record subject to review after a 12(b)(6) dismissal.

Also, the advertising slogan in <u>Mead Johnson</u> was a single phrase printed on the label of a can of infant formula. Proctor & Gamble points us to a similar phrase in its advertising, the tag line "Compare with your detergent . . . Whiter is not possible," as though the two slogans were comparable. Proctor & Gamble's tag line, however, is an integral part of a television commercial with substantial text and images. There is a fundamental difference between a slogan on a can label that communicates its meaning to consumers solely through the printed text, and a tag line shown on the screen at the end of a television commercial that communicates its message to consumers through a combination of audio-visual and textual media. Because we decline to read Proctor & Gamble's tag line separately from the entirety of the commercials, <u>Mead Johnson</u> is factually inapplicable to the present case.

### 3. <u>Puffery</u>

Finally, the statements, "Compare with your detergent . . . Whiter is not possible," and "Whiter is not possible," are not non-actionable puffing. "'Puffing' is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely . . . ." McCarthy § 27:38. "A specific and

measurable advertisement claim of product superiority . . . is not puffery." Southland Sod Farms, 108 F.3d at 1145 (claim that turfgrass seed requires "50% less mowing" was not puffery); see also Castrol, Inc., 987 F.2d at 946 (claim that motor oil provides "longer engine life and better engine protection" was not puffery). Whether the "Doorstep Challenge" campaign conveys the message that Ace gets clothes whiter than chlorine bleach, or compares Ace with other detergents without implying that it whitens better than chlorine bleach, the claim is specific and measurable, not the kind of vague or subjective statement that characterizes puffery. Indeed, Proctor & Gamble concedes in its brief that its claim in its modified campaign, "Compare with your detergent . . . Whiter is not possible," is not puffery. It contends that it is a true statement supported by its studies comparing Ace con Blanqueador with other detergents.

The original campaign tag line, "Whiter is not possible," is a closer call on the puffing issue. Standing alone, that statement might well constitute an unspecified boast, and hence puffing. In context, however, the statement invites consumers to compare Ace's whitening power against either other detergents acting alone or detergents used with chlorine bleach. Despite this ambiguity, it is a specific, measurable claim, and hence not puffing.

Proctor & Gamble's promotional brochure, on the other hand, contained statements like, "hit the white spot with just one shot," "Dare to pass the test. Wash with Ace and nothing else," "Say goodbye to the complications of cloro and other cleaners," and "Resist the 'bombs.' Put your ACE con Blanqueador to the test." We agree with Proctor & Gamble that each of these statements, viewed in isolation, is precisely the type of vague, unspecified boasting that typifies puffery. Nonetheless, the promotional brochure also states, "Whiter is not possible," the same statement that appears as the tag line on the original Doorstep Challenge television commercials. As in the television commercials, that statement may be literally false. Accordingly, the brochure cannot be dismissed as mere puffery.

## III.

Pursuant to § 43(a) of the Lanham Act, Clorox has stated a claim for literal falsity relating to the name of the Ace liquid detergent, "Ace con Blanqueador." Clorox has also stated claims for literal falsity and for misleading advertising with respect to the commercials aired in both the original and modified Doorstep Challenge advertising campaigns, as well as the promotional brochure. The district court erred by dismissing these claims pursuant to Rule 12(b)(6). We must vacate its judgment and remand the Lanham Act claims to the

district court for further proceedings consistent with this decision.[13]

Clorox has also appealed the dismissal of its claim pursuant to Article 1802 of the Puerto Rico Civil Code. Although Clorox in its Second Amended Complaint sought to have the alleged violation of the Lanham Act added as a predicate for liability under Article 1802, the motion for leave to file the second amended complaint was still pending at the time Clorox's case was dismissed. Accordingly, the district court never ruled on that motion, and hence Clorox's Article 1802 claim predicated on a violation of the Lanham Act is not properly before us at this time.[14] On remand, Clorox should be given the opportunity to resubmit its motion for leave to amend.

**Vacated and remanded to the district court for further proceedings consistent with this opinion.**

---

[13] We did not deal with every statement alleged by Clorox to be false and misleading. The effect of the district court's decision was to dismiss the Lanham Act claim in its entirety. If any specific allegation in the complaint does not justify that outcome, we must vacate. We have chosen to focus in this appeal on what seem to be the most important of Clorox's allegations. That focus does not mean that we are deciding the merits of any of the allegations by Clorox not addressed in this decision.

[14] For the same reason, we also decline to express any opinion on the validity of Clorox's claims in its Second Amended Complaint relating to Proctor & Gamble's September 1998 Ace con Blanqueador advertising campaign.