STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-184

SAVE OUR SEBASTICOOK, INC.,
et al.,

Plaintiffs

v.

DECISIONS ON
MOTIONS TO DISMISS

JOHN E. BALDACCI, et al.,

Defendants

This matter comes before the court on motions to dismiss filed by the original

state official defendants and subsequent intervenors FPL Energy Maine Hydro LLC

("FPL") and a coalition of environmental advocacy organizations referred to as the

Kennebec Coalition. Because the court finds the plaintiffs' claims are not of a nature for

which relief can be granted and are time barred, the motions will be granted.

## Background[1]

Early in the last Century, the Fort Halifax Dam was constructed on the

Sebasticook River in Winslow, Maine. The dam created a lake-like impoundment

approximately 5.2 miles long. The dam's primary function was generation of

hydroelectric power, but the impoundment has created the added benefit of providing a

home for fish and other aquatic species plus recreational resources including boating,

snowmobiling, swimming and fishing. The plaintiffs, individually and as members of

Save Our Sebasticook ("SOS"), are primarily owners of property abutting the

impoundment, and beneficiaries of its resources.

---

[1] For purposes of deciding these motions to dismiss and in outlining the background, the court has considered as true all of the statements included in the complaint plus exhibits to the complaint and public documents appended to other filings which present no issues of authenticity, including the KHDG agreements and FERC decisions. *Clorox Co. P.R. v. Proctor & Gamble Co.*, 228 F.3d 24, 32 (1st Cir. 2000).

As a hydroelectric dam, the Fort Halifax Dam falls within the regulatory jurisdiction of the Federal Energy Regulatory Commission ("FERC"). In 1987, the dam owner (Central Maine Power Co.) and owners of four other dams joined to form the Kennebec Hydro Developers Group ("KHDG"), which together with state agencies negotiated an agreement concerning river resources including fish passage at the dam sites. Included in the agreement was a requirement that a permanent upstream fish passage be established at the Fort Halifax Dam by May 1, 1999. Development of this 1987 agreement was done with public notice and opportunity to participate.

In October of 1994 and again in November, 1997, FERC amended or renewed the Fort Halifax Dam license and included the requirement of permanent upstream fish passage, but with no specified technology for that passage. In 1998, another KHDG agreement was entered, this time including the Kennebec Coalition agencies and federal wildlife and fishery agencies. According to this agreement, the owner would have to install a specific "fish lift" technology by 2003 or, in the alternative, the dam must be partially or fully breached.

The plaintiffs assert that unlike prior agreements, the negotiation of the 1998 KHDG agreement was done without notice to the public or opportunity for the public to participate in or observe the negotiations. However, unlike the 1987 pact, this agreement included added parties and more complex issues such as removal of the Edwards Dam in Augusta and a *quid pro quo* for an industrial development project by Bath Iron Works at its downstream Kennebec River location. The agreement was signed and became effective May 26, 1998.

On September 16, 1998, FERC issued an amended license for the dam incorporating a requirement that a "fish lift" be installed by May 1, 2003.

Abutting landowner concern about implementation of the fish passage requirements began to grow as the required implementation date approached. Eventually, FPL Energy Maine, the present owner of the dam, petitioned FERC to surrender its license and partially breach the Fort Halifax Dam in order to allow fish passage. On January 23, 2004, FERC approved this request and issued an order approving license surrender and partial breach. A rehearing was sought and denied. The FERC decision apparently remains on appeal in federal courts in the District of Columbia.

On August 16, 2004, the plaintiffs filed the present complaint for declaratory and injunctive relief in the Kennebec County Superior Court. The seven-count complaint alleges violations of a variety of Maine statutes including 38 M.R.S.A.A § 640, 12 M.R.S.A. § 407 and the Administrative Procedures Act, 5 M.R.S.A. §§ 8001 *et seq.* The complaint also alleges the defendant state officials' actions in developing and executing the 1998 KHDG agreement exceeded their legal authority, violated the Freedom of Access Law, constituted unlawful surrender of the police power, and was an unlawful acceptance of funds.

## Discussion

The ultimate goal of SOS is to save the Fort Halifax dam and the man-made lake it created. This is not a goal which can be accomplished through the present litigation since regulation and even the existence of the dam is fully within the sole jurisdiction of FERC. The plaintiffs have been fully engaged in the FERC review process and are pursuing judicial review through the federal courts. This court has no jurisdiction with regard to FERC or the dam.

Rather than attacking the FERC decision through this litigation, which it cannot do, SOS attacks the 1998 KHDG agreement indirectly by requesting declaratory

judgment that the process of developing that agreement was unlawful and therefore the agreement itself is null, void and unenforceable. The seven individual counts of the complaint are all oriented toward the primary argument that the action of the state defendants in negotiating in the 1998 KHDG agreement was beyond their authority because it was done without a necessary degree of public participation or otherwise violated state law. In response, the defendants and intervenors have filed the pending motions to dismiss, with multiple arguments. Not all these arguments will be addressed. However, the court will discuss the major contentions.

1.    **Indispensable parties.**

The defendants' first argument is that the complaint should be dismissed for failure to join indispensable parties. The point is that if the litigation is an attack on the validity of the agreement, all parties to the agreement should also be parties to the litigation. The court agrees that the other parties to the agreement should be included, but there is pending a motion by the plaintiffs to amend their complaint specifically to include these new parties, which motion the court would grant if the litigation had continued viability.

2.    **Sovereign immunity.**

The defendants also claim that the doctrine of sovereign immunity would bar suit against the State. However, the court agrees with the plaintiffs that their complaint deals specifically with the actions of state officials and whether these officials have acted in contravention of state law. The fact that these are state officials does not make this a suit against the State that would be barred by sovereign immunity. *Jones v. State Highway Commission*, 238 A.2d 226 (Me. 1968).

## 3.    Mootness.

The defendants also argue that the litigation is moot because only FERC has the necessary jurisdiction to save the dam and this court cannot provide any effective relief. Another way of stating this is that the parties may have a justiciable controversy, but it is not a controversy which is justiciable in a state court venue.

While the court agrees with defendants that attacking the validity of the 1998 agreement through a declaratory judgment action could not produce any real relief for the plaintiffs, [2] there was a justiciable issue, short of the future of the dam that could have been litigated if it had been raised in the proper manner and at the proper time. That issue concerns whether the negotiations leading up to the 1998 agreement were subject to the public participation requirements of 38 M.R.S.A. § 640. These statutory provisions require notice and information to the public with regard to all existing hydropower projects, and meaningful opportunities for public comment. These notices, information and opportunities arguably were not provided in the present case. However, neither section 640 nor the declaratory judgment statutes set forth in 14

---

[2] It is difficult to see any effect this litigation could have on the future of the dam, even if the court agreed entirely with the plaintiffs. The same issues that give rise to the present litigation were previously presented before FERC and in making its decision, which SOS is presently appealing in federal court, FERC stated,

> 48.    Lack of opportunity to participate in the formulation of the KHDG Agreement did not deprive these entities of an opportunity for effective opposition to dam removal because neither the agreement nor the amended license obligates anyone to remove the dam. The agreement, by itself, would not have been sufficient to bring about dam removal as long as the project remained under license, because the dam is licensed project work whose removal could only occur with the Commission's approval. Moreover, as we have explained, the incorporation into the license of the agreement's fish passage provisions did not obligate the Commission to require removal of the dam if the fish lift were not installed. Whether to authorize removal of the dam is a decision to be made by the Commission in the present surrender proceeding, in which the opponents of dam have had full opportunity to participate. Our decision here to require partial dam removal is not dictated by the agreement but rather is based on our consideration of the entire record before us in this proceeding.

Order Approving Surrender of License and Partial Removal of Project Works and Dismissing Request for Rehearing, issued January 23, 2004, p. 18.

M.R.S.A. §§ 5951-5963 create a new cause of action by themselves. Arguably, a proper basis for a cause of action on this issue would have been review of final agency action pursuant to the Administrative Procedures Act, 5 M.R.S.A. § 11001 and M.R. Civ. P. 80C, plus any applicable independent claims. Such action probably would not have saved the dam. However, a Rule 80C challenge would have presented a genuine controversy, adjudication of the would have served a useful purpose in the sense that it could have provided guidance for state officials involved in similar future negotiations. Such review was not sought at that time and, as will be seen, it is now too late. The result is that the complaint fails to state a claim for which relief can be granted. M.R. Civ. P. 12(b)(6).

4.      Timeliness/statute of limitations.

Even if the plaintiffs had made a claim for which meaningful relief could be ordered, thereby avoiding the mootness/relief issue, the complaint would still be too late. Assuming that the proper procedure for challenging the actions of the state officials was review pursuant to the Administrative Procedures Act and Rule 80C, such review must be requested within 30 or 40 days following final agency action, 5 M.R.S.A. § 11002(3). Couching the claim as a declaratory judgment action will not avoid the 30-day appeal period under these circumstances. *Fitanites v. Perry*, 537 A.2d 1139 (Me. 1988). Even if the court is wrong and the plaintiffs had a viable cause of action apart from Rule 80C review, the six-year general statute of limitations would apply here. 14 M.R.S.A. § 752. The present complaint was not filed until after expiration of the six-year period, counting from the date of the 1998 agreement under attack.

The plaintiffs attempt to avoid the statute of limitations and appeal period problems by claiming a type of continually renewing claim origination, analogous to the continuing tort doctrine. This argument fails for two reasons. First, the actions by

state officials which the plaintiffs contest -- lack of notice and public participation -- all came to a head when the agreement was signed. There is nothing that happened after the signing of the agreement with regard to notice and participation that would give rise to any claim of violation of section 640 or other pre-agreement activities. Second, to this court's knowledge, our Supreme Judicial Court has never accepted a doctrine of continuing administrative harm, nor is it considered likely to do so. Since the present complaint did not beat either the appeals deadline for Rule 80C or the statute of limitations, depending upon which is appropriate, the complaint must be dismissed as untimely.

In summary, out of the mass of briefs and arguments that have been produced, the court concludes that the motions to dismiss on behalf of the defendants should be granted both because the action should have been brought as a Rule 80C appeal in order to provide any meaningful relief, and because the litigation is untimely whether as an appeal or action for declaratory judgment.

For the reasons stated, the entry will be:

Motions to dismiss GRANTED and the complaint is DISMISSED.

Dated: March 25, 2005

S. Kirk Studstrup
Justice, Superior Court

SAVE OUR SEBASTICOOK INC - PLAINTIFF

Attorney for: SAVE OUR SEBASTICOOK INC

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CV-2004-00184

DOCKET RECORD

KENNETH FLETCHER  - PLAINTIFF

Attorney for: KENNETH FLETCHER

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

MARY ELLEN FLETCHER  - PLAINTIFF

Attorney for: MARY ELLEN FLETCHER

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

KENNETH ESKELUND  - PLAINTIFF

Attorney for: KENNETH ESKELUND

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

PETER LALIBERTE  - PLAINTIFF

Attorney for: PETER LALIBERTE

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

DONNA LALIBERTE  - PLAINTIFF

Attorney for: DONNA LALIBERTE

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

JAMES GORMAN  - PLAINTIFF

Attorney for: JAMES GORMAN

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

PATRICIA GORMAN  - PLAINTIFF

Attorney for: PATRICIA GORMAN

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

PETER NEWKIRK  - PLAINTIFF

Attorney for: PETER NEWKIRK

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

KATHLEEN NEWKIRK  - PLAINTIFF

Attorney for: KATHLEEN NEWKIRK

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

RENE DESROSIERS  - PLAINTIFF

Attorney for: RENE DESROSIERS

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

KATHLEEN DESROSIERS  - PLAINTIFF

Attorney for: KATHLEEN DESROSIERS

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

JANE EDWARDS  - PLAINTIFF

Attorney for: JANE EDWARDS

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

WENDELL GOODRICH  - PLAINTIFF

Attorney for: WENDELL GOODRICH

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

PARKER SMITH  - PLAINTIFF

Attorney for: PARKER SMITH

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

DAVID BUTLER  - PLAINTIFF

Attorney for: DAVID BUTLER

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

JEFFREY VANDENHEUVEL  - PLAINTIFF

Attorney for: JEFFREY VANDENHEUVEL

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

JERRY QUIRION  - PLAINTIFF

Attorney for: JERRY QUIRION

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058

JOSEPH DUMONT  - PLAINTIFF

Attorney for: JOSEPH DUMONT

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058


ROBERTA DUMONT  - PLAINTIFF

Attorney for: ROBERTA DUMONT

PRETI FLAHERTY ET AL
PO BOX 1058
45 MEMORIAL CIRCLE
AUGUSTA ME 04332-1058


vs
JOHN E BALDACCI  - DEFENDANT

Attorney for: JOHN E BALDACCI
DENNIS HARNISH  - RETAINED
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


MARTHA FREEMAN  - DEFENDANT

Attorney for: MARTHA FREEMAN
DENNIS HARNISH  - RETAINED
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


GEORGE LAPOINTE  - DEFENDANT

Attorney for: GEORGE LAPOINTE
DENNIS HARNISH  - RETAINED
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


ROLAND D MARTIN  - DEFENDANT

Attorney for: ROLAND D MARTIN
DENNIS HARNISH  - RETAINED
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


FPL ENERGY MAINE HYDRO - INTERVENOR

Attorney for: FPL ENERGY MAINE HYDRO
MATTHEW D MANAHAN  - RETAINED

PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101


KENNEBEC COALITION MEMBERS - INTERVENOR

Attorney for: KENNEBEC COALITION MEMBERS
GREGORY W SAMPLE   - RETAINED 12/29/2004
DRUMMOND WOODSUM & MACMAHON
245 COMMERCIAL ST.
PO BOX 9781
PORTLAND ME 04104-5081


Filing Document: COMPLAINT                    Minor Case Type: DECLARATORY JUDGMENT
Filing Date: 08/16/2004

## Docket Events:

08/16/2004 FILING DOCUMENT - COMPLAINT FILED ON 08/16/2004
          Plaintiff's Attorney:  ANTHONY BUXTON
          VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, FILED.

08/16/2004 Party(s):  SAVE OUR SEBASTICOOK INC
          ATTORNEY - RETAINED ENTERED ON 08/16/2004
          Plaintiff's Attorney: ANTHONY BUXTON

          Party(s):  KENNETH FLETCHER
          ATTORNEY - RETAINED ENTERED ON 08/16/2004
          Plaintiff's Attorney: ANTHONY BUXTON

          Party(s):  MARY ELLEN FLETCHER
          ATTORNEY - RETAINED ENTERED ON 08/16/2004
          Plaintiff's Attorney: ANTHONY BUXTON

08/16/2004 Party(s):  KENNETH ESKELUND
          ATTORNEY - RETAINED ENTERED ON 08/16/2004
          Plaintiff's Attorney: ANTHONY BUXTON

          Party(s):  PETER LALIBERTE
          ATTORNEY - RETAINED ENTERED ON 08/16/2004
          Plaintiff's Attorney: ANTHONY BUXTON

          Party(s):  DONNA LALIBERTE
          ATTORNEY - RETAINED ENTERED ON 08/16/2004
          Plaintiff's Attorney: ANTHONY BUXTON

          Party(s):  JAMES GORMAN
          ATTORNEY - RETAINED ENTERED ON 08/16/2004
          Plaintiff's Attorney: ANTHONY BUXTON

          Party(s):  PATRICIA GORMAN
          ATTORNEY - RETAINED ENTERED ON 08/16/2004
          Plaintiff's Attorney: ANTHONY BUXTON

Printed on: 03/25/2005