# United States Court of Appeals
## For the First Circuit

No. 21-1571

AMERICAN BOARD OF INTERNAL MEDICINE,

Plaintiff, Appellee,

v.

JAIME A. SALAS RUSHFORD, MD,

Defendant/Third Party Plaintiff, Appellant,

CHRISTINE K. CASSEL; NAOMI P. O'GRADY; PEARSON EDUCATION, INC.;
JOAN M. VON FELDT; LYNN LANGDON; RICHARD DOE; DAVID L. COLEMAN;
RICHARD BARON; ERIC S. HOLMBOE; COMPANIES A,B,C; DOCTORS 1-2800;
JOHN DOE; RICHARD DOE,

Third Party Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia Carreño-Coll, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Thompson, Circuit Judges.

Andrew L. Schlafly for appellant.

Paul Lantieri, III, with whom Carlos A. Rodriguez-Vidal,
Goldman Antonetti & Cordova LLC, Hara K. Jacobs, and Ballard Spahr
LLP were on brief, for appellees.

August 29, 2024

**LIPEZ**, **Circuit Judge**.  The American Board of Internal Medicine ("ABIM") suspended the certification of appellant Dr. Jaime Salas Rushford, a Puerto Rico physician, after concluding that he improperly gave board exam questions to his test prep instructor.  ABIM then sued Salas Rushford for copyright infringement in federal court in New Jersey.  This appeal addresses only Salas Rushford's counterclaims against ABIM and ABIM-affiliated individuals (the "ABIM Individuals") alleging a "sham" process leading to his suspension.  The counterclaims were transferred to Puerto Rico, where the district court granted appellees' motion for judgment on the pleadings.  The court also denied Salas Rushford leave to amend his pleading.  We affirm.

## I.

We review an entry of judgment on the pleadings de novo, "view[ing] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[ing] all reasonable inferences in his favor."  Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007).  We may, however, "augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011).  Here, accordingly, we recite the facts as alleged by Salas Rushford and assume their veracity, gleaning factual content

from documents Salas Rushford referenced in his complaint that ABIM subsequently provided in its motion.[1]

## A. Factual Background

### 1. Salas Rushford's Board Certification

Salas Rushford is a physician specializing in internal medicine who is licensed to practice in Puerto Rico as well as several states. After completing his residency, Salas Rushford sought certification in internal medicine from ABIM. ABIM is a private nonprofit offering certification in internal medicine and numerous subspecialties. While board certification is not legally required to practice medicine, it is a highly valuable credential, as it is necessary to obtain admission privileges at most hospitals and is a requirement for employment in many medical practices. According to ABIM, it grants board certification in internal medicine to physicians who meet certain requirements, including completion of an accredited three-year residency and passing the board exam, which is a ten-hour computer-based exam administered at testing centers around the United States.[2]

Salas Rushford was scheduled to take the board exam on August 20, 2009, at a testing center in Puerto Rico. According to

---

[1] When helpful to provide context, we also refer to ABIM's original complaint, though we do not assume the truth of its allegations.

[2] ABIM refers to the physicians it has certified as "diplomates."

- 4 -

ABIM, August 20 was the sixth day of its ten-day "examination window" in August 2009. ABIM asserts that its exams are secure and its exam questions confidential and copyrighted, as advance access to this material would compromise the exam's integrity.

To prepare for the board exam, Salas Rushford enrolled in a six-day review course offered by Arora Board Review ("ABR"). Salas Rushford's colleagues and professors highly recommended ABR to him. The course was presented by a well-regarded physician, Dr. Rajender K. Arora, had existed for two decades, was accredited by a body with ties to ABIM, and was hosted by the City University of New York. Salas Rushford attended the course in May 2009, along with 350 other participants. Salas Rushford also participated in several study groups, some of which included former ABR course participants, and members of these groups exchanged study material, including simulated exam questions, obtained from multiple sources. Salas Rushford also remained in contact with Arora, who welcomed students to discuss issues with him at any time ahead of the exam.

According to ABIM, and unbeknownst to Salas Rushford, ABIM had begun to investigate ABR after developing suspicions that ABR was illicitly collecting and disseminating confidential, copyrighted board exam questions after ABIM discovered actual exam content on ABR's website. Salas Rushford alleges that ABIM sent a "spy" to attend the ABR course he attended but never warned him

or other attendees about its suspicions or took action to remove potentially compromised questions from the exam. Ultimately, ABIM sued ABR for copyright infringement, and the parties eventually settled that lawsuit. ABIM claims that, during the process of discovery in that litigation, it obtained several emails in which Salas Rushford allegedly sent numerous exam questions to Arora prior to sitting for the exam, thereby prompting the copyright infringement claim against Salas Rushford.[3]

Salas Rushford took the board exam on August 20, 2009, and passed. He practiced as a board-certified physician for several years and was well-regarded among colleagues, patients, and his community.

## 2. Suspension of Salas Rushford's Certification

On May 8, 2012, almost three years after taking the board exam, Salas Rushford received a letter from Lynn Langdon, ABIM's chief operating officer.[4] The letter informed Salas Rushford that

---

[3] ABIM alleges that Salas Rushford obtained some of these questions from a colleague who had taken the exam earlier in the examination window and that Salas Rushford also forwarded a collection of several years' worth of material from past exams to Arora. It also alleges that, in return, Arora sent Salas Rushford questions obtained from other ABR students.

[4] Salas Rushford incorporated this letter into his complaint by reference, and ABIM attached the letter to its motion for judgment on the pleadings. Thus, we recount the letter's content to provide context for the dispute and "augment" the facts as appropriate. Haley, 657 F.3d at 46. We do not, however, assume the truth of factual allegations made in the letter. See

- 6 -

during an investigation of ABR and its students, ABIM uncovered evidence that Salas Rushford had "collected and compiled hundreds of ABIM examination questions from multiple sources" and sent them to ABR using multiple email addresses, including a "disguised email address" under a "pseudonym," "Jimmy R."

The letter stated that ABIM intended to revoke Salas Rushford's board certification. It cited as authority to do so provisions within ABIM's "Policies and Procedures for Certification" (the "Policies & Procedures"), which candidates agree to follow when registering for the exam.[5] The letter advised Salas Rushford that he could contest his revocation through a three-stage appeals process, during which the revocation would not be considered final. Neither the existence nor the details of this appeals process are specified in the Policies & Procedures.

Along with its notification to Salas Rushford, ABIM updated its website to reflect Salas Rushford's certification status as "Revocation Recommended." The website did not provide

_____

Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth., 4 F.4th 63, 73 (1st Cir. 2021).

[5] According to Salas Rushford, the letter's reference to the Policies & Procedures is spurious because the letter attached the August 2009 Policies & Procedures, whereas Salas Rushford's contract was governed by the October 2008 version of the document in effect when he registered for the exam (the "October 2008 Policies & Procedures"). As we discuss, our resolution of this dispute turns on a particular provision of ABIM's Policies & Procedures that Salas Rushford does not dispute is contained within the October 2008 document.

the context for this recommendation, and ABIM refused to alter the representation of Salas Rushford's certification status after he denied wrongdoing.

Salas Rushford sought an appeal through ABIM's internal process. He describes the process as a more than two-year-long "tour de force in bad faith dealing and reputational damages," perpetrated by ABIM and the ABIM Individuals. During this "improvised" process, ABIM refused to provide a copy of the October 2008 Policies & Procedures. Moreover, at his final appeals hearing, ABIM "failed to cite a specific Rule, Policy or Resolution" that he had violated. Nor did ABIM or the appeals panel respond to his "request to specifically address the charges" or "provide the applicable Policies and Procedures." ABIM also failed "to provide the evidence to substantiate the allegations" against him, which the panel instead simply "deemed credible and proven." Lastly, ABIM and the panel refused to make available to Salas Rushford the actual examination questions ABIM believed he illicitly disseminated, thereby denying him an opportunity to mount the defense that the questions he shared were not actually confidential exam content.

According to a letter sent on behalf of ABIM, Salas Rushford presented several defenses through counsel before and

during his final appeals hearing.[6] First, he made a contract-based argument that the October 2008 Policies & Procedures did not prohibit the conduct of which he was accused. Second, he argued that he did not try to conceal his identity, as he regularly used the email through which he sent the exam questions and uses "Jimmy R." as a nickname.[7] He also criticized the appeals process and presented evidence of his good character and community standing. However, he chose not to testify.

Finding his arguments "unpersuasive," the panel concluded that "[t]he evidence of record -- which Dr. Salas Rushford refused to address with the Panel -- demonstrates that Dr. Salas Rushford failed to maintain satisfactory ethical and professional behavior, acted in a manner that adversely affected his professional integrity, and subverted the certification process." The panel also "express[ed] its disappointment that Dr. Salas Rushford chose not to answer its questions about his conduct and the evidence, and refused to confront the core issues presented by the evidence." The panel modified ABIM's recommended discipline

---

[6] Salas Rushford incorporated by reference in his pleading a letter from the appeals panel describing this hearing, which the appellees attached to their motion. Once again, we draw upon this letter for context but do not assume the truth of factual allegations contained within the letter.

[7] ABIM also accused Salas Rushford of violating a pledge of honesty during the exam, which Salas Rushford denied signing. The appeals panel, however, did not rely on the purported violation of the pledge in resolving his case.

to a seven-year suspension, retroactively beginning on December 7, 2012.

Following the panel's determination, ABIM updated its website to display Salas Rushford's certification status as "Not Certified."  Immediately below, the website displayed the words "INITIAL CERTIFICATION Internal Medicine: 2009."

Salas Rushford alleges that appellees' actions caused him "professional and emotional harm," as well as loss of income.

## B.  Procedural Background

ABIM filed its original complaint against Salas Rushford in October 2014 in the United States District Court for the District of New Jersey.[8]  The complaint asserts violations of the federal Copyright Act stemming from Salas Rushford's alleged efforts to disseminate copyrighted exam questions.[9]

Salas Rushford filed a counterclaim and third-party complaint (the "CTPC") against ABIM and the seven ABIM Individuals who are officers of ABIM and members of the appeals panel that finalized his suspension.  The CTPC asserts three counts relevant

---

[8] ABIM initially filed in federal court in New Jersey because ABR and Arora are located in New Jersey, and thus Salas Rushford allegedly transmitted copyrighted material into that state.

[9] The district court dismissed ABIM's complaint, but the Third Circuit reversed that determination.  See Am. Bd. of Internal Med. v. Rushford, No. 14-cv-06428, 2017 WL 1024267 (D.N.J. Mar. 16, 2017) rev'd, 841 F. App'x 440 (3d Cir. 2020).  The matter remains pending.  See Am. Bd. of Internal Med. v. Rushford, No. 14-cv-06428 (D.N.J).

- 10 -

to this appeal: a breach of contract claim against ABIM, a "general torts" claim against the ABIM Individuals, and a claim of "commercial disparagement" under the Lanham Act, 15 U.S.C. §§ 1051 et seq., against six of the individuals.[10]

After the District of New Jersey transferred the CTPC to the District of Puerto Rico, appellees moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). In his opposition, Salas Rushford attached and made extensive reference to several documents that were the fruits of discovery between the parties, including depositions and expert reports. Salas Rushford's approach prompted the district court, at the hearing on the motion, to ask appellees if they wished to convert their motion to one for summary judgment. Because appellees replied that they wished to proceed under the judgment-on-the-pleadings standard, the court did not consider the discovery-related documents Salas Rushford had referenced. Therefore, they are not part of the record before us on appeal.

---

[10] The CTPC included three other counts: (1) a claim under the Copyright Act against numerous doctors who authored ABIM's exam questions and the testing center that proctored the exam, which was dismissed without prejudice and is not at issue in this appeal; (2) a contract claim against the testing center, which Salas Rushford has abandoned; and (3) a second general torts claim concerning the publication of statements about his certification status on ABIM's website, which the district court construed as a defamation claim. Salas Rushford's only argument related to this defamation claim appears in a two-sentence footnote in his reply brief, and, accordingly, we deem the claim waived. See Hamdallah v. CPC Carolina PR, LLC, 91 F.4th 1, 21 n.25 (1st Cir. 2024).

The district court resolved appellees' Rule 12(c) motion in two phases. In its first opinion and order, the court dismissed Salas Rushford's Lanham Act claim and the now-waived defamation claim. See Am. Bd. of Internal Med. v. Salas Rushford ("Salas Rushford I"), No. 19-1943, 2021 WL 214268 (D.P.R. Jan. 20, 2021). The court held in abeyance the breach of contract claim and remaining tort claim because the contract governing the parties' relationship was not contained in either party's pleadings. Appellees subsequently produced five documents, including the October 2008 Policies & Procedures. After a dispute over that document's authenticity,[11] the district court accepted it as the true document governing the parties' relationship.

The district court dismissed Salas Rushford's remaining claims in a second opinion and order. See Am. Bd. of Internal Med. v. Salas Rushford ("Salas Rushford II"), No. 19-1943, 2021 WL 2892837 (D.P.R. July 9, 2021). The court concluded that Salas Rushford did not adequately allege breach of an express contractual obligation by ABIM. The court further held that Salas Rushford failed to state a claim for breach of the implied covenant of good faith and fair dealing, reasoning that his allegation that ABIM's

---

[11] Salas Rushford disputed the authenticity of the October 2008 Policies & Procedures because it made two references to "July 2008." Appellees authenticated the document, explaining via affidavit that these stray references had not been updated from the document's previous version.

- 12 -

appeals process was a sham was belied by the record. The court emphasized, in particular, that Salas Rushford had "refused to address the allegations against him head-on." Id. at *7. Finally, the court dismissed Salas Rushford's tort claim against the ABIM Individuals, finding that Salas Rushford had identified no duty that they breached.

The court dismissed all of Salas Rushford's claims with prejudice, denying his request for leave to amend the CTPC.

**II.**

On appeal, Salas Rushford argues that the district court erred in dismissing his contract claim against ABIM, his tort claim against the ABIM Individuals, and the Lanham Act claim against six of the ABIM Individuals. He also challenges the district court's denial of his request for leave to amend.

**A. Contract Claim**

Under New Jersey law, the "essential elements for [a] breach of contract claim [are] 'a valid contract, defective performance by the defendant, and resulting damages.'" Globe Motor Co. v. Igdalev, 139 A.3d 57, 64 (N.J. 2016) (quoting Coyle v. Englander's, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)).[12] The only element in dispute is ABIM's allegedly deficient

---

[12] The district court determined that the law of New Jersey, rather than Puerto Rico, governs Salas Rushford's breach of contract claim. On appeal, the parties do not meaningfully dispute the applicability of New Jersey law. Indeed, in his opening brief,

- 13 -

performance of a contractual duty.  Though Salas Rushford's precise theory is not entirely clear, the CTPC alleges two discernable contractual duties that ABIM may have breached.[13]  First, ABIM had an ongoing contractual duty to maintain Salas Rushford's board-certified status according to the terms of the Policies & Procedures.  Second, ABIM had an implied duty of good faith and fair dealing.  We address these theories in turn.

### 1. ABIM's Duty to Maintain Salas Rushford's Certification

We limit our assessment of Salas Rushford's contract claim to the section of the October 2008 Policies & Procedures

---

Salas Rushford does not cite any cases applying Puerto Rico contract law at all (nor does he assert that Puerto Rico law applies).  To the contrary, both parties appear to agree that the outcome would be the same under either New Jersey or Puerto Rico law.  While Salas Rushford does cite one case applying Puerto Rico contract law in his reply brief and half-heartedly suggests, for the first time, that Puerto Rico law should apply, we have been clear that "[s]uch an untimely and incomplete presentation of" choice of law issues constitutes waiver.  Butler v. Deutsche Bank Tr. Co. Ams., 748 F.3d 28, 37 (1st Cir. 2014).  We will therefore follow the lead of the district court and the parties, in their initial briefing, in applying New Jersey law.  See, e.g., Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 23 (1st Cir. 2011) ("When the parties agree on the substantive law that should govern, 'we may hold the parties to their plausible choice of law, whether or not that choice is correct.'" (quoting Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010)));  New Ponce Shopping Ctr., S.E. v. Integrand Assurance Co., 86 F.3d 265, 267 (1st Cir. 1996) ("Generally, where the parties ignore choice of law issues on appeal, we indulge their assumption that a particular jurisdiction's law applies.").

[13] In the district court, ABIM disputed that it had any contractual obligation to Salas Rushford at all.  The district court disagreed, and ABIM has not renewed that argument on appeal.

- 14 -

that formed the primary basis of the district court's decision.[14]

This provision states:

> ABIM may, at its discretion, revoke or rescind certification if the diplomate was not qualified to receive the certificate at the time it was issued, even if the certificate was issued as a result of a mistake on the part of ABIM. It may also revoke the certificate if the diplomate fails to maintain moral, ethical, or professional behavior satisfactory to ABIM, or engages in misconduct that adversely affects professional competence or integrity.

The district court concluded that, even under "the most benevolent reading possible of [the] CTPC," Salas Rushford's contract claim failed because the Policies & Procedures "vested ABIM with the ability to suspend or revoke his board certification if he did not comply with certain standards and requirements as

---

[14] As noted, though Salas Rushford disputed the authenticity of the October 2008 Policies & Procedures document supplied by ABIM, the district court accepted the document as authentic based on an affidavit supplied by ABIM. It is not clear that a district court may resolve a dispute over a contract's authenticity in this fashion, without converting the motion into one for summary judgment, as we have said that a court may consider "documents -- the authenticity of which is not challenged -- that are central to the plaintiff's claim or sufficiently referred to in the complaint." Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 717 (1st Cir. 2014) (emphasis added). Salas Rushford, however, has not developed any argument on appeal disputing that the revocation provision is included within the October 2008 Policies & Procedures, and, indeed, his arguments assume that it is. We thus deem any challenge to the district court's reliance on this provision to resolve the contract dispute waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

set forth therein," including that he "maintain moral, ethical, [and] professional" conduct. <u>Salas Rushford II</u>, 2021 WL 2892837, at *5. Then, observing that ABIM had determined that "Salas Rushford failed to maintain satisfactory ethical and professional behavior," the court reasoned that "in order for a breach of contract to materialize, Dr. Salas-Rushford was tasked with pleading that he in fact did not contravene [these] postulates, but that, even then, ABIM move[d] forward with the suspension of his board certification." <u>Id.</u> Finding Salas Rushford to have made no such allegation, the court dismissed his contract claim.

Salas Rushford argues on appeal that the CTPC does contain such allegations. We agree. It would seem reasonable to infer from the CTPC's strenuous disagreement with ABIM's revocation decision that he has alleged that he did nothing wrong. Indeed, the CTPC expressly alleges at paragraph 49, in response to the allegations in ABIM's first disciplinary letter accusing him of improper conduct, that those allegations were false.

ABIM does not pursue affirmance solely by defending the district court's rationale, however. <u>See</u> <u>United States</u> v. <u>George</u>, 886 F.3d 31, 39 (1st Cir. 2018) ("We are at liberty to affirm a district court's judgment on any ground made manifest by the record, whether or not that particular ground was raised below."). In its appellate brief, ABIM advances an interpretation of the contract that reserved to ABIM broad discretion to revoke a

diplomate's certification according to its subjective judgment of a diplomate's conduct. Indeed, as ABIM puts it, "[r]egardless of whether [Salas Rushford] agrees that he violated ABIM's policies, the pleadings and other documents appropriately considered at this stage would render implausible any allegation that ABIM breached an obligation to him when it exercised the discretion afforded it by the parties' contract to suspend his certification when it concluded, after a robust process, that he had violated its policies."

Despite ABIM's argument for affirming on an alternative ground, Salas Rushford develops no argument in his reply brief that the contract does not afford ABIM this level of discretion, as a matter of plain text or New Jersey law. Salas Rushford simply shrugs off ABIM's "one-sided interpretation of a document that it alone drafted," without developing a contrary interpretation. We have recognized that such a failure to address an appellee's argument for an alternative ground of affirmance constitutes waiver. See Furtado v. Oberg, 949 F.3d 56, 59 (1st Cir. 2020). After all, as we have very often repeated, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for

the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).[15]

Nonetheless, we choose not to rely on Salas Rushford's potential waiver, as we find his breach of contract claim to clearly fail on the merits of the alternative ground ABIM proposes. First, as a matter of plain text, the provision states that ABIM is entitled to revoke a diplomate's certification when it finds that "the diplomate fails to maintain moral, ethical, or professional behavior satisfactory to ABIM." (Emphasis added). As we read that language, the revocation provision clearly vests ABIM with the discretion to judge whether a diplomate has conducted himself morally, ethically, and professionally, according to ABIM's own standards. And the revocation provision contains no

---

[15] Salas Rushford does make one specific argument that does not directly address ABIM's broad discretion argument regarding the revocation provision. He asserts -- again, without any citation or further development -- that the requirement that he "maintain" satisfactory behavior did not apply until after his certification. For one thing, this argument would have applied with equal force to the district court's reliance on the revocation provision, and thus his failure to raise it until his reply brief constitutes waiver for this reason as well. See Hamdallah, 91 F.4th at 21 n.25. In any event, Salas Rushford alleges that the Policies & Procedures took effect once he registered for the board exam (and thus before his alleged misappropriation of exam material). There is no indication in the revocation provision that ABIM must overlook immoral, unethical, or unprofessional conduct committed by a candidate during their candidacy for board certification but discovered by ABIM after certification, and Salas Rushford supplies no basis for thinking so.

- 18 -

language defining those standards of behavior or otherwise constraining ABIM's exercise of its revocation authority.

Our review of New Jersey law further assures us that ABIM's interpretation is correct. The revocation provision expressly conditions ABIM's revocation authority on ABIM's "satisfact[ion]." Under New Jersey law, such "satisfaction clauses" are interpreted subjectively whenever "the extent and quality of performance can[not] be measured by objective tests" or the language of the contract otherwise compels a subjective assessment. See Silvestri v. Optus Software, Inc., 814 A.2d 602, 606 (N.J. 2003) (holding that satisfaction clauses in employment contracts are judged under a subjective standard absent language to the contrary). Under such a subjective standard, "satisfaction [is] dependent on the personal, honest evaluation of the party to be satisfied." Id.; see also id. ("The party to be satisfied is the sole judge of his or her satisfaction. . . . If the party to be satisfied asserts in good faith that he or she is not satisfied, there can be no inquiry into the reasonableness of his or her attitude." (Quoting 13 Williston on Contracts § 38.23 (Lord ed. 2000))).

Here, the provision reserves to ABIM's judgment whether "the diplomate [has] fail[ed] to maintain moral, ethical, or professional behavior," criteria the provision does not define and

that would seem to defy objective measurement.[16]  Indeed, the provision expressly states that the diplomate's behavior must be "satisfactory to ABIM."  (Emphasis added).  In fact, New Jersey's highest court has applied a subjective standard to a contract including somewhat similar criteria and using nearly identical language.  See Corn Prod. Ref. Co. v. Fasola, 109 A. 505, 505-06 (N.J. 1920) ("If at any time before shipment the financial responsibility of the buyer becomes impaired, or unsatisfactory to the seller, cash payment or satisfactory security may be required by the seller before shipment."  (Emphasis added)).

In short, ABIM's alternative ground for affirmance finds ample support as a matter of the revocation provision's plain text, as well as New Jersey law.  We see no need to remand to the district court a claim that, in our de novo review, is clearly meritless, and we thus affirm the dismissal of the breach of contract claim on the alternative basis advanced by ABIM.

### 2.  The Implied Covenant of Good Faith and Fair Dealing

In support of his theory that ABIM breached the implied covenant of good faith and fair dealing, Salas Rushford points to

---

[16] By way of comparison, Silvestri specifies that an objective standard applies when the contract pertains to "operative fitness," "mechanical utility," or "marketability."  814 A.2d at 606.  Plainly enough, a contract pertaining to good morals, sound ethics, and professionalism is of an entirely different sort.

his allegations that describe ABIM's investigation and disciplinary process as unfair.

**(a) Background Law**

New Jersey law recognizes an "implied covenant of good faith and fair dealing" in "every contract." Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997). Though the implied covenant "cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1126 (N.J. 2001). Indeed, a party "may breach the implied covenant of good faith and fair dealing in performing its obligations even when it exercises an express and unconditional right." Sons of Thunder, 690 A.2d at 588 (holding that defendant breached the implied covenant when exercising unilateral right to terminate contract); see also Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc., 351 A.2d 349, 352 (N.J. 1976) (similar).

Accordingly, even a party with unilateral discretion under a contract does not possess "unbridled discretion." Wilson, 773 A.2d at 1130. Such a party "breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." Id. In light of

- 21 -

these principles, though we have concluded that ABIM had considerable discretion in the exercise of its revocation authority, it was nonetheless obligated to exercise that discretion in good faith, meaning in a reasonable manner, without "bad motive or [ill] intention." Id.; see also Silvestri, 814 A.2d at 607 (explaining that even when a satisfaction clause relates to a party's subjective satisfaction, the party is "oblige[d] . . . to act 'honestly in accordance with his duty of good faith and fair dealing'" (quoting Beasley v. St. Mary's Hosp. of Centralia, 558 N.E.2d 677, 682 (Ill. App. Ct. 1990))). Salas Rushford asserts that ABIM breached its duty of good faith by running a sham disciplinary process that did not give him a fair opportunity to prove his innocence.

**(b) Improper Factfinding**

Salas Rushford argues that the district court erroneously dismissed his good faith and fair dealing claim because, contrary to the pleading standard, the district court improperly resolved the central disputed fact of whether ABIM's disciplinary process was an unfair sham by considering material outside the pleadings. Specifically, the district court held that Salas Rushford had not stated a claim for breach of the implied covenant based, in large part, on its finding that the record failed to show that ABIM conducted its disciplinary review in an unfair and unreasonable manner. In so concluding, the court relied

heavily on the ABIM appeals panel's assertion, in its letter to Salas Rushford, that he had "refused to address the allegations against him head-on." Salas Rushford II, 2021 WL 2892837, at *7 & *7 n.17.

As we have explained, Salas Rushford incorporated that letter into the CTPC by reference, and the district court was thus entitled to consider its contents and even to "augment" the facts as appropriate. Haley, 657 F.3d at 46. But even when a document, such as a letter from the defendant, is properly before a district court at the pleadings stage, the court may not "assume the truth of . . . factual claims in that letter," particularly when doing so would require it to abandon its obligation to "assume[] the truth of [the plaintiff's] factual claims." Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth., 4 F.4th 63, 73 (1st Cir. 2021). Such "weighing [of] competing claims [by] both parties" to support a conclusion that the plaintiff's allegations stand on insufficient evidence is incompatible with the pleading standard. Id. at 73-74.

The district court erroneously engaged in such weighing here, testing the sufficiency of Salas Rushford's allegations about a sham process not against the applicable legal standard but against the competing allegation contained in the appeals panel's letter that he failed to avail himself of ABIM's fundamentally fair process. We thus agree with Salas Rushford that the court strayed from the judgment-on-the-pleadings standard.

- 23 -

The district court's error notwithstanding, we are entitled to affirm the district court's judgment on any ground available in the record. See, e.g., Miles v. Great N. Ins. Co., 634 F.3d 61, 64-65 & n.5 (1st Cir. 2011); see also Lefkowitz v. Smith Barney, Harris Upham & Co., 804 F.2d 154, 156-57 (1st Cir. 1986) (per curiam) ("Even if we assume that the district court erred by considering factual matters outside the pleading in reaching its decision, such error would be harmless because the dismissal can be justified without reference to the extrinsic material."); Cebollero-Bertran, 4 F.4th at 74 ("Despite the district court's legal error" of improperly assuming the truth of factual claims in a letter attached to the complaint, "we could affirm the decision on any basis available in the record.").

Salas Rushford's allegation that ABIM's appeals process was a sham must plausibly state a claim under New Jersey law. Here, that means he must have plausibly alleged that ABIM possessed a bad motive and behaved unreasonably, rather than in a justifiable exercise of its discretion. See Wilson, 773 A.2d at 1130. Our analysis starts, and ends, with the bad motive requirement.

**(c) Bad Motive Requirement**

The bad motive requirement is a separate and no less "vital" element of "an action for breach of the covenant" under New Jersey law than an allegation that the defendant has acted unreasonably. Brunswick Hills Racquet Club, Inc. v. Route 18

Shopping Ctr. Assocs., 864 A.2d 387, 396 (N.J. 2005); see also Buck Consultants, Inc. v. Glenpointe Assocs., 217 F. App'x 142, 152 (3d Cir. 2007), as amended (Mar. 16, 2007) (explaining that even a finding of unreasonableness under New Jersey contract law does not establish a breach of the implied covenant absent a further finding of "subjective, wrongful intent" (applying Wilson, 773 A.2d at 1130)).

"[B]ad motive may be established through circumstantial evidence," including the defendant's statements, actions, and "the surrounding circumstances." Wilson, 773 A.2d at 1132. For instance, a plaintiff can show the defendant's bad motive by pointing to "'[s]ubterfuges and evasions' in the performance of a contract." Brunswick Hills Racquet Club, 864 A.2d at 396 (alteration in original) (quoting Restatement (Second) of Contracts § 205 cmt. d (Am. L. Inst. 1981)). We have similarly observed that "allegations of self-dealing" may support a showing of bad motive in the exercise of contractual duties. Lass v. Bank of Am., N.A., 695 F.3d 129, 139 (1st Cir. 2012) (holding that allegation that bank purchased excess flood insurance at the homeowner's expense to generate commissions stated a breach of good faith claim under Massachusetts law); accord Brunswick Hills Racquet Club, 864 A.2d at 399 (holding that landlord who engaged in "a series of evasions and delays" to "unjustly enrich[] itself with a windfall increase in rent at plaintiff's expense" breached

- 25 -

the implied covenant under New Jersey law); Wilson, 773 A.2d at 1131-32 (holding that evidence that the defendant "set prices intending to destroy plaintiffs economically," in furtherance of a change in business strategy, would establish a breach of the duty of good faith).

The CTPC contains many conclusory assertions that ABIM possessed a bad motive. It states that ABIM had set a "course to destroy Dr. Salas Rushford's reputation and livelihood," put on a "tour de force in bad faith dealing and reputational damages," and "engaged in an ongoing campaign of appalling conduct intended to destroy the personal and professional life of Dr. Salas Rushford." Such "free-wheeling invective," of course, is not entitled to any presumption of validity. Cordi-Allen v. Conlon, 494 F.3d 245, 250 (1st Cir. 2007). While these accusations imply that ABIM harbored personal animus against Salas Rushford, he has not supported that claim with any factual allegations plausibly demonstrating that any such animus existed beyond the empty rhetoric quoted above.[17] See Elliott & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 329 (3d Cir. 2006) (rejecting claim under New Jersey law where

---

[17] In addition to the lack of any plausible support for Salas Rushford's assertion that ABIM harbored personal animus towards him, we note that the CTPC does not support an inference of any self-serving motive on ABIM's part, as is frequently present in New Jersey cases sustaining claims for breach of the implied covenant. See, e.g., Wilson, 773 A.2d at 1131-32; Brunswick Hills Racquet Club, 864 A.2d at 399.

"there are no facts to demonstrate, or from which to infer, bad motive or intention," but "only conclusory allegations that [the defendant] had such motives"); see also, e.g., Havlik v. Johnson & Wales Univ., 509 F.3d 25, 33 (1st Cir. 2007) (stating that where a claim involves a state of mind element like malice, "the plaintiff cannot rest on naked assertions or bare conclusions but, rather, must proffer facts sufficient to support a finding of" the requisite state of mind).

Stripping away these bald assertions, the CTPC contains no other allegations from which we can plausibly infer ABIM's bad motive. At most, there are the allegations describing what Salas Rushford characterizes as an unfair process: ABIM did not warn him of its investigation into ABR or remove any compromised questions from the exam; it oversaw an "improvised" appeals process in which it refused to cite the rules or policies that he had violated; it relied on the incorrect Policies & Procedures document; and it refused to share its evidence, including the actual exam questions he supposedly misappropriated.[18] However, these allegations about ABIM's disciplinary process, taken as true, do not plausibly establish ABIM's bad motive. Indeed, each allegation gives rise

---

[18] The district court briefly addressed an additional argument -- that ABIM had not interviewed Salas Rushford during its investigation -- finding that there is no such allegation in the CTPC. Though Salas Rushford repeats the same argument on appeal, we decline to analyze it further for the same reason.

to an "obvious alternative explanation," Ashcroft v. Iqbal, 556 U.S. 662, 682 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 567 (2007)), about ABIM's motivations or is contradicted by Salas Rushford's own pleadings.

Chiefly, Salas Rushford complains that in the course of carrying out its "improvised process," ABIM would not divulge its evidence against him, and, in particular, that it would not share the actual test questions that he supposedly stole. While access to that information might have been helpful to Salas Rushford in his appeal, ABIM's alleged refusal to divulge those questions does not demonstrate animus towards Salas Rushford, nor any other improper motive. Rather, its refusal is "not only compatible with, but indeed [is] more likely explained by" an anodyne motivation: ABIM was unwilling to share that confidential, proprietary material, particularly with a person it suspected of previously misappropriating that material. Iqbal, 556 U.S. at 680. As the CTPC states -- and as the materials it incorporates by reference confirm -- ABIM informed Salas Rushford of what its evidence showed: numerous emails in which Salas Rushford disseminated hundreds of exam questions.[19] It then provided him with layers of

_____

[19] ABIM's initial letter to Salas Rushford stated:

> Evidence seized from Arora Board Review demonstrates that between May 2009 and August 2009 you collected and compiled hundreds of ABIM examination questions from multiple sources in preparation for your ABIM

- 28 -

appellate review, even though -- as Salas Rushford points out -- the Policies & Procedures did not require any appellate review at all. ABIM did not have to prosecute its case against Salas Rushford in his preferred manner and provide him with all the process he wanted to exercise in good faith its authority to revoke his certification.

Likewise, Salas Rushford's allegation that ABIM did not warn him of its investigation into ABR does not plausibly establish ABIM's bad motive. ABIM's decision not to tip off course participants of its suspicions of ABR's wrongdoing is readily explained by the fact that such an act would risk exposing its investigative efforts, and thus this allegation also succumbs to an "obvious alternative explanation" that we think more likely

---

examination and that you sent hundreds of ABIM examinations questions to Arora Board Review from your e-mail address "jsalasmd@yahoo.com" and from a disguised e-mail address "padrinojr@yahoo.com" under the pseudonym, "Jimmy R." to conceal your identity.

Of course, we do not accept the truth of these charges. Nonetheless, this text shows that ABIM provided enough information to Salas Rushford to put him on notice of the allegations against him and its source of proof. Indeed, the CTPC acknowledges Salas Rushford's receipt of this letter and that the letter informed him of his accused wrongdoing. Moreover, Salas Rushford does not allege that he did not send the emails referenced in this letter or that he was unable to access or locate these emails, which were presumably in his possession. The CTPC only alleges that Salas Rushford was unable to cross-reference these questions with ABIM's question bank to independently verify ABIM's contention that the questions he allegedly emailed were in fact actual exam content.

captures ABIM's motives than Salas Rushford's unsupported assertions of bad intent. Twombly, 550 U.S. at 567.

Salas Rushford also argues that ABIM's disciplinary process was unfair because ABIM did not cite the specific policy he violated. This allegation, however, is flatly contradicted by the material in his pleading and incorporated by reference. In addition to detailing the charges against him, ABIM cited several provisions of its Policies & Procedures that it said justified revoking his certification. Namely, it invoked the requirements that he "maintain moral, ethical [and] professional behavior satisfactory to the Board" and refrain from "misconduct adversely affecting the Diplomate's integrity."

Our review of other cases assessing claims under New Jersey law that disciplinary proceedings violated the implied covenant of good faith and fair dealing further assures us that Salas Rushford's pleading is inadequate to state such a claim.[20] In Donohue v. Capella University, LLC, No. 22-5634, 2023 WL 5425503, at *6 (D.N.J. Aug. 22, 2023), for instance, the district court dismissed a doctoral student's complaint alleging that the university breached the duty of good faith and fair dealing despite

---

[20] These cases involve the disciplinary proceedings of educational institutions. We do not presume that this context is perfectly analogous. Nonetheless, we find these cases informative in our assessment of Salas Rushford's allegations regarding ABIM's disciplinary procedures.

- 30 -

allegations of an unfair disciplinary process similar to those alleged by Salas Rushford. The student, accused of plagiarism, alleged that the school wrongfully relied on a plagiarism detection software that it knew to be unreliable and that, after the school assigned the student a remediation assignment, he was set up for failure because he was locked out of the program needed to complete the assignment, the school provided inadequate instructions for the assignment, and the school did not provide feedback when he failed the remedial assignment on his first attempt (after failing a second attempt, he was academically dismissed). Id. at *1-2. Notwithstanding these allegations, the district court observed that the student's own allegations showed that he had received a multi-layered disciplinary process and that the complaint "fail[ed] to identify an ill motive or intention," and thus the court could not conclude that the student had plausibly alleged any breach of the implied covenant. Id. at *6; see also Donohue v. Capella Univ., LLC, No. 22-5634, 2024 WL 3162921, at *4 (D.N.J. June 25, 2024) (dismissing the student's subsequent amended complaint because "Plaintiff's allegations are devoid of an ill motive and Capella's conduct cannot be said to have no legitimate purpose").

By contrast, cases that have sustained breach of good faith claims against disciplinary proceedings have involved specific allegations of a bad motive, backed up by allegations of

clearly unfair and unjustifiable conduct. See, e.g., Doe v. Princeton Univ., 30 F.4th 335, 348 (3d Cir. 2022) (sustaining breach of good faith claim where student's allegation of discriminatory animus was supported by allegations that the university systematically "disregarded exculpatory evidence [in his favor] and incriminating evidence against [his accuser], construed all discrepancies and inconsistencies in [his accuser's] favor, and ignored evidence corroborative of [his] counter claims" (internal quotation marks and brackets omitted)); Doe v. Rider Univ., No. 16-cv-4882, 2018 WL 466225, at *14 (D.N.J. Jan. 17, 2018) (sustaining breach of good faith claim where student alleged that the university official overseeing his disciplinary proceeding had told him he was "going against" him).

We also find informative the court's analysis in Napolitano v. Trustees of Princeton University, 453 A.2d 279, 283-84 (N.J. Super. Ct. Ch. Div. 1982). In that case, a New Jersey trial court granted summary judgment against a student claiming that her university's discipline of her violated the implied duty of good faith and fair dealing. Though sympathetic to the student's arguments that the school's discipline for suspected plagiarism was harsh -- she had an unblemished academic record before the incident at issue, her alleged plagiarism was unintentional, and other similarly-situated students had received less severe punishments -- the court reasoned that "the proper

role of a court is to permit private organizations to govern their own affairs, unless the court's intrusion is warranted by conduct so egregious as to constitute a breach of the parties' agreement." Id. at 284. Because it could not "find that Princeton could not in good faith have assessed the penalties it did," the court exercised "[j]udicial restraint" and declined to disturb the sanction. Id. The reviewing court affirmed, invoking New Jersey Supreme Court precedent "afford[ing] [deference] to the internal decision-making process[es]" of private institutions as "the members of an association are generally bound by its private law." Napolitano v. Trustees of Princeton Univ., 453 A.2d 263, 275 (N.J. Super. Ct. App. Div. 1982) (citing Higgins v. Am. Soc. of Clinical Pathologists, 238 A.2d 665, 671 (N.J. 1968)). We take a similar view of Salas Rushford's effort to obtain federal judicial intervention into ABIM's disciplinary proceedings -- absent any allegations from which we can plausibly conclude that ABIM had a bad motive in its dealing with Salas Rushford, and therefore shirked its implicit duty to afford him a fair disciplinary process, we decline to second-guess ABIM's approach to its internal disciplinary matters.

In sum, Salas Rushford has not plausibly alleged that ABIM possessed a bad motive, nor can we reasonably infer as much from the facts he does allege. This glaring fault alone is a sufficient basis to affirm the district court's dismissal of Salas

Rushford's good faith claim. See, e.g., Kolbe v. BAC Home Loans Servicing, LP, 738 F.3d 432, 454 (1st Cir. 2013) (en banc) (lead opinion of equally divided court) (rejecting claim of breach of the implied covenant under New Jersey law where allegations of "self-dealing . . . fail[ed] the standard of plausibility necessary to survive a motion to dismiss"); Hassler v. Sovereign Bank, 374 F. App'x 341, 345 (3d Cir. 2010) (dismissing claim under New Jersey law where the plaintiff "does not allege any bad motive on the part of [the defendant]"). Mindful that under New Jersey law "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive," Wilson, 773 A.2d at 1130, we cannot conclude that Salas Rushford has stated a successful claim for breach of the implied covenant.

## B. Tort Claim

Salas Rushford asserts that the ABIM Individuals[21] are liable in tort for the way they carried out their investigation of ABR and for the suspension of his certification.[22]

---

[21] In his briefing, Salas Rushford directs these arguments at ABIM rather than the ABIM Individuals, whom the CTPC names in this count. We construe his arguments to run against the ABIM Individuals rather than ABIM.

[22] ABIM argues that Salas Rushford's tort claim amounts to nothing more than a disguised procedural due process claim challenging ABIM's disciplinary process. This is an unduly narrow view of his claim, as we explain below. Of course, to the extent Salas Rushford makes any such due process claim, that theory would fail because, as the CTPC makes clear, neither ABIM nor the ABIM

- 34 -

Under Puerto Rico law, a plaintiff like Salas Rushford, seeking to establish liability under Article 1802 of the Puerto Rico Civil Code, must establish "a duty requiring the defendant to conform to a certain standard of care, a breach of that duty, proof of damage, and a causal connection between the negligence and the damage." Nieves-Romero v. United States, 715 F.3d 375, 378–79 (1st Cir. 2013) (citing Sociedad de Gananciales v. González Padín Co., 17 P.R. Offic. Trans. 111, 125 (1986)).[23] Like the district court, we focus our analysis on whether Salas Rushford has established a duty of care owed by the ABIM Individuals. Under Puerto Rico law, a duty of care "refers to an 'obligation to anticipate and take measures against a danger that is reasonably foreseeable.'" Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 88 (1st Cir. 2020) (quoting Woods-Leber v. Hyatt Hotels of P.R., Inc., 951 F. Supp. 1028, 1036 (D.P.R. 1996), aff'd, 124 F.3d 47 (1st Cir. 1997)). Such a duty "may arise (1) by statute or regulation; (2) 'as the result of a special relationship between the parties that has arisen through custom; or (3) as the result

Individuals are state actors, and the CTPC does not allege that their actions could, nonetheless, be construed as state action. See Jarvis v. Vill. Gun Shop, Inc., 805 F.3d 1, 8 (1st Cir. 2015).

[23] Once again, we adopt the district court's conclusion that Puerto Rico law applies to Salas Rushford's tort claim because the parties do not dispute the applicability of that body of law on appeal. See, e.g., Lluberes, 663 F.3d at 23; Perry, 629 F.3d at 8; New Ponce Shopping Ctr., 86 F.3d at 267.

of a traditionally recognized duty of care particular to the situation.'" Id. (quoting De Jesús-Adorno v. Browning Ferris Indus. of P.R., Inc., 160 F.3d 839, 842 (1st Cir. 1998)). The "essential elements" of the duty are "foreseeability . . . and the risk involved in each specific case." Montalbán v. Centro Com. Plaza Carolina, 132 P.R. Dec. 785 (P.R. 1993) (official translation).

Tellingly, rather than identify a duty that has been breached, Salas Rushford argues, incorrectly, that "it is not necessary to allege the existence of a duty in order to assert a cause of action in tort." Despite this disclaimer, in identifying two courses of conduct that form the basis of his tort claim -- the defendants' failure to warn him about its investigation of ABR and the unfair manner in which they conducted the appeals process -- he essentially articulates the purported duties that the ABIM Individuals have allegedly breached.

Salas Rushford first argues that the individual defendants had a duty to warn him about their suspicions regarding the ABR course, rather than allow him to participate in the course and thereby expose himself to the risk of his certification being later suspended.[24] Salas Rushford fails to explain, however, how

_____

[24] It is not clear from the CTPC that the ABIM Individuals participated in this stage of the investigation. Since Salas Rushford's theory fails regardless, we need not also consider this potential causation issue.

such a duty is compelled by any of the considerations described above, such as legal authority, a special relationship, or a situation-specific duty traditionally recognized. See Baum-Holland, 964 F.3d at 88. For that reason, this tort theory fails.

Salas Rushford next suggests that the ABIM Individuals owed a duty of care in how they conducted his disciplinary review. Specifically, echoing the central theory underpinning his breach of the contractual duty of good faith claim, he asserts that the ABIM Individuals acted negligently by refusing to share with him the Policies & Procedures document guiding their decision-making, as well as the evidence against him. Indeed, he claims that they had a duty to refrain from participating in his hearing at all, given their affiliation with ABIM.

Salas Rushford points us to no legal authority, special relationship, or traditionally recognized duty in this situation that would establish any such duty of care governing the ABIM Individuals' conduct during the disciplinary proceedings, nor have we discovered any. And, in our survey of Puerto Rico law, we have not found any authority supporting the existence of such a duty. Accord Doe v. Trs. of Bos. Coll., 892 F.3d 67, 94 (1st Cir. 2018) (similarly holding, under Massachusetts law, that individual defendants conducting "disciplinary proceedings ar[ising] from [a] contractual relationship[,]" had no tort duty of care because

- 37 -

"[w]hen an 'alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the <u>only</u> theory upon which liability would be imposed'" (quoting <u>Treadwell</u> v. <u>John Hancock Mut. Life Ins. Co.</u>, 666 F. Supp. 278, 289 (D. Mass. 1987))). We thus reject Salas Rushford's second theory of liability and affirm the dismissal of his tort claims.

## C. Lanham Act Claim

Salas Rushford asserts a claim of "commercial disparagement" against most of the ABIM Individuals, invoking 15 U.S.C. § 1125(a). The Lanham Act makes liable:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

- 38 -

Salas Rushford's Lanham Act claim appears to target two statements about his certification status published on ABIM's website: (1) the label of "Revocation Recommended" after ABIM initiated disciplinary action and (2) the labels of "Not Certified" and "INITIAL CERTIFICATION Internal Medicine: 2009" once ABIM suspended his certification. He argues that these statements make the ABIM Individuals liable under both subsection (A), for false association, and under subsection (B), for false advertising. We address each theory of liability in turn.

## 1. False Association

To state a claim under section 1125(a)(1)(A), the plaintiff must plausibly allege facts showing a likelihood of consumer confusion "as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." Claims under this subsection typically involve "attempts to appropriate the goodwill associated with a competitor[,]" for example, by misappropriating a trademark or falsely implying an endorsement. Flynn v. AK Peters, Ltd., 377 F.3d 13, 19 (1st Cir. 2004) (quoting Purolator, Inc. v. EFRA Distribs., Inc., 687 F.2d 554, 561 (1st Cir. 1982)); see also, e.g., Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 208 (1st Cir. 1996) (Saris, J., concurring) ("Typical claims under prong (A)

- 39 -

would involve a new trademark that was confusingly similar to an already established one, or an attempt by a defendant to 'palm-off' its goods as those of a competitor by use of the competitor's mark."). In evaluating such claims, the factors we usually consider to gauge the likelihood of consumer confusion under this subsection mostly relate to the possibility of consumers mistaking one party's good, service, or trademark with that of another.[25]

Salas Rushford's theory, however, does not remotely relate to any risk of consumers of his medical services being misled into misunderstanding the origin of those services, or those of any competitors, or misapprehending his affiliation with the ABIM Individuals. Rather, Salas Rushford's theory is, as he puts it, one of "commercial disparagement," that is, that consumers will be misled into believing that his medical services are substandard because of statements about him on ABIM's website.

The district court noted this deficiency, remarking that "the CTPC . . . is barren of any mention [or] factual allegation of a plausible likelihood of confusion in connection with the

---

[25] See I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 43 (1st Cir. 1998) ("This court has identified eight factors to be weighed in determining likelihood of confusion: '(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark.'" (quoting Bos. Athletic Ass'n v. Sullivan, 867 F.2d 22, 29 (1st Cir. 1989))).

reporting of his certification status on ABIM's website." Salas Rushford I, 2021 WL 214268, at *5. On appeal, Salas Rushford once again argues only that "patients were likely to believe that the quality of Dr. Salas Rushford's services was in question," without any effort to connect that concern to the type of consumer confusion contemplated in subsection (A).[26] We thus agree with the district court that Salas Rushford has failed to state a claim under this theory of liability.

## 2. False Advertising

Salas Rushford next invokes 15 U.S.C. § 1125(a)(1)(B), which prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." As relevant to Salas Rushford's challenge to statements appearing on ABIM's website, "[t]he Lanham Act prohibits only 'false or misleading description[s] [or representations] of fact,'" and thus the "plaintiff bears the burden of proving that the statement at issue

---

[26] Salas Rushford does cite Doe v. Friendfinder Network, Inc., for the proposition that the Act prohibits "a defendant from using the plaintiff's name in commerce in connection with services in a way likely to cause confusion as to 'the affiliation, connection, or association' of the parties." 540 F. Supp. 2d 288, 306 (D.N.H. 2008) (quoting 15 U.S.C. § 1125(a)(1)(A)). That case concerned the "defendants' unauthorized use of a plaintiff's identity for marketing purposes," id., and thus lends Salas Rushford no support for his invocation of subsection (A) in the very different circumstance of this case.

is false and/or misleading." Azurity Pharms., Inc. v. Edge Pharma, LLC, 45 F.4th 479, 486 (1st Cir. 2022) (second alteration in original) (quoting 15 U.S.C. § 1125(a)(1)). While "[t]hat question is typically for the factfinder to determine," id. at 487, the plaintiff must still, of course, plausibly allege such a statement, see id. at 495, 499 (dismissing Lanham Act claims for failure to allege misleading representations of fact).

The CTPC makes clear that the challenged statements on ABIM's website are literally true. Salas Rushford must therefore shoulder the "additional burden" of showing that the statements, "though 'literally true or ambiguous,' nonetheless [are] 'likely to mislead and confuse consumers' into believing a 'false representation of fact.'" Id. at 487 (omission removed) (first quoting Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 311 (1st Cir. 2002), and then quoting Clorox Co. P.R. v. Proctor & Gamble Com. Co., 228 F.3d 24, 33 & 33 n.6 (1st Cir. 2000)).[27] Moreover, with respect to liability under subsection (B), Salas Rushford "must show how consumers have actually reacted to the challenged advertisement rather than merely demonstrating

_____

[27] We have recognized that a plaintiff alleging that a statement is misleading is nonetheless "relieved of the burden of demonstrating consumer deception when there is evidence that defendants intentionally deceived the consuming public." Cashmere & Camel Hair Mfrs. Inst., 284 F.3d at 311 n.8. Salas Rushford, however, has made no appellate argument about intentional deception, nor does the CTPC contain any such allegations.

how they could have reacted." Clorox, 228 F.3d at 33 (emphasis added).[28]

The district court found Salas Rushford's claim of liability under subsection (B) lacking in several respects.[29] We find it sufficient to focus on the CTPC's most glaring deficiency: it contains no allegations whatsoever indicating that any consumers have actually been misled by the challenged statements. We have repeatedly emphasized that plaintiffs seeking damages must make this additional showing when they premise a false advertising

---

[28] In Cashmere & Camel Hair Manufacturers Institute, we clarified that this requirement is incurred in cases, like this one, seeking monetary damages rather than injunctive relief. 284 F.3d at 311 n.9.

[29] Because subsection (B) applies only to "commercial advertising or promotion," 15 U.S.C. § 1125(a)(1)(B), the district court found Salas Rushford's claim insufficient on the ground that the statements on ABIM's website about Salas Rushford's certification status are not "commercial speech." See also Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 19 (1st Cir. 2003) (explaining that to constitute "commercial advertising or promotion" a statement "must (a) constitute commercial speech (b) made with the intent of influencing potential customers to purchase the speaker's goods or services (c) by a speaker who is a competitor of the plaintiff in some line of trade or commerce and (d) disseminated to the consuming public in such a way as to constitute 'advertising' or 'promotion'"); but see id. at 19-20 (noting that "the Lanham Act's commercial disparagement provision covers more than classic advertising campaigns" and "to pass the pleading threshold in a Lanham Act § 43(a)(1)(B) case, a plaintiff at the very least must identify some medium or means through which the defendant disseminated information to a particular class of consumers"). We need not reach the question of whether ABIM's website simply reporting the certification status of doctors falls within the "commercial advertising or promotion" contemplated by the act.

claim upon the purported misleading nature of a statement, rather than the statement's literal falsity, unless they allege that the defendant acted with an intention to deceive.  See Azurity Pharms., 45 F.4th at 487 & n.3; Cashmere & Camel Hair Mfrs. Inst. 284 F.3d at 311 n.9; Clorox, 228 F.3d at 33.[30]

Most often, a plaintiff in a Lanham Act case makes such a showing through consumer survey data indicating "that a substantial portion of the audience . . . was actually misled," Clorox, 228 F.3d at 36, though surveys are not the only permissible form of evidence to make this showing, see, e.g., Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc., 270 F.3d 298, 323 (6th Cir. 2001).  While we clarified in Clorox that a plaintiff need not "identify the particular consumer survey that will be used to support its allegations to survive a motion to dismiss," 228 F.3d at 37 n.11, we have nonetheless made clear that plaintiffs must make some allegations of actual consumer deception or intentional deception to state a legally sufficient claim for relief, see id. at 36-37; Azurity Pharms., 45 F.4th at 487 n.3.  Accordingly, the

---

[30] As the Third Circuit has explained, see Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 n.8 (3d Cir. 1994), this requirement of demonstrating actual falsity applies to misleading statements underpinning false advertising claims under 15 U.S.C. § 1125(a)(1)(B), but not false association claims under 15 U.S.C. § 1125(a)(1)(A), which, by the plain text of the act, may be proven simply by showing that the challenged expression is "likely to cause confusion, or to cause mistake, or to deceive," id. (emphasis added).

absence of any such allegations alone compels the dismissal of Salas Rushford's false advertising claim.

## D. Leave to Amend

Salas Rushford also challenges the district court's denial of leave to amend the CTPC. We review the denial of leave to amend for abuse of discretion, and, as such, "we will affirm 'so long as the record evinces an arguably adequate basis for the court's decision.'" U.S. ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 192 (1st Cir. 2015) (quoting Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 19 (1st Cir. 2001)). Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). That rule notwithstanding, "[a] court may deny leave to amend for a variety of reasons, including 'futility, bad faith, undue delay, or a dilatory motive on the movant's part.'" Privitera v. Curran (In re Curran), 855 F.3d 19, 27-28 (1st Cir. 2017) (quoting Hatch, 274 F.3d at 19).

In denying leave to amend the CTPC, the district court focused largely on the timing of Salas Rushford's request. See Salas Rushford II, 2021 WL 2892837, at *10-11. It noted that he requested leave to amend more than five years after filing the CTPC. Moreover, it observed that, previously, Salas Rushford had "vehemently" disavowed any need to amend the CTPC in a bid to expedite the proceedings. Id. at *11. Further, Salas Rushford had made no concrete arguments explaining why justice required

- 45 -

leave to amend, simply asserting that he should have the chance to "address any defect" in the CTPC. Id. at *10.

On appeal, Salas Rushford argues only that an amendment would not be futile. As our description of the district court's ruling reveals, however, Salas Rushford fails to address the district court's primary rationale -- that his request was unduly delayed -- and he therefore offers no basis for finding that the court abused its discretion. See Winslow v. Aroostook Cnty., 736 F.3d 23, 31 n.7 (1st Cir. 2013) ("We will not disturb the district court's determination" where the appellant "merely disagrees with the district court's holding at length and presents no reasoned argument that the district court abused its discretion in this instance.").

Moreover, insofar as the district court's reasoning could be construed as a comment on the futility of Salas Rushford's requested leave to amend,[31] Salas Rushford's rebuttal to that finding lacks substance. Neither in his request to the district court nor on appeal has he explained why his proposed amended CTPC would survive dismissal beyond the vague assertion that "perceive[d] deficiencies in the pleading would be easily

---

[31] In denying leave to amend, the district court remarked that "[o]ther than including a generic assertion that leave to amend is requested in order to 'address any defect,' Dr. Salas Rushford does not articulate why a request to amend the CTPC is being advanced at this juncture." Salas Rushford II, 2021 WL 2892837, at *10 (citation to record and alteration omitted).

- 46 -

remedied." That unsupported contention is inadequate to demonstrate an abuse of discretion in the district court's judgment. Accordingly, we affirm the district court's denial of leave to amend.

### III.

In light of the foregoing analysis, we affirm the district court's grant of judgment on the pleadings to appellees.

So ordered.

**- Concurring and Dissenting Opinion Follows -**

**BARRON**, <u>Chief Judge</u>, concurring in part and dissenting in part. I agree with the majority's well-reasoned resolution of this appeal, save for the way that the majority resolves Jaime A. Salas Rushford's challenge to the dismissal of his counterclaim for breach of contract. I write separately to explain why I would vacate rather than affirm the judgment as to the dismissal of that claim.

The District Court rested the contract claim's dismissal solely on Salas Rushford's failure to have alleged facts that contested the basis for the decision by the American Board of Internal Medicine ("ABIM") to suspend his certification. ABIM had relied for the suspension on Salas Rushford's asserted misconduct and a provision in the operative contract (the "Revocation Provision") that states, in relevant part, that ABIM could "revoke the certificate if the diplomate fails to maintain moral, ethical, or professional behavior satisfactory to ABIM . . . ."

As the majority notes, however, Salas Rushford expressly alleges in paragraph 49 of his counterclaim and third-party complaint (the "CTPC") that he did not engage in the claimed misconduct. Moreover, Salas Rushford refers expressly to that portion of the complaint in his briefing on appeal to us. Thus, in my view, this ground for the contract claim's dismissal does not hold up.

The majority does not suggest otherwise.  The majority nonetheless affirms the District Court's dismissal of the claim on the ground that the Revocation Provision gives ABIM unilateral discretion to determine for itself whether Salas Rushford failed to "maintain moral, ethical, or professional behavior."  This ground for affirmance was first surfaced on appeal, however, and then only based on a contention by ABIM that rests entirely on a text-based assertion about the Revocation Provision's meaning that Salas Rushford characterizes, not implausibly, as "one-sided."

In such a circumstance, it strikes me as problematic to affirm the contract claim's dismissal based on our own unaided attempt to parse New Jersey's law of satisfaction contracts.  Salas Rushford would first have had reason to address this issue only in his reply brief, and even then, he had no developed argument from the appellees to address.  And while the majority offers its own view about how the law of a state outside our Circuit would be best construed by the highest court of a state outside our Circuit, it does so without identifying any case that addresses a satisfaction contract between an accreditation organization and a professional seeking accreditation.  Whether that context is more like the employment context -- in which "highly personal and idiosyncratic" judgment is to be anticipated -- or a standard consumer context -- in which subjective standards of satisfaction are disfavored -- is not evident to me.  See Silvestri v. Optus

- 49 -

Software, Inc., 814 A.2d 602, 607 (N.J. 2003); see also Restatement (Second) of Contracts § 228 cmt. b (1981) ("[I]t will not usually be supposed that the obligee has assumed the risk of the obligor's unreasonable, even if honest, dissatisfaction."); 13 Williston on Contracts § 38:22 (4th ed.) ("[A]s is true generally, the law here prefers the more objective reasonable person standard to that of the more subjective good faith standard, and the former standard will apply absent a specific expression in the instrument or a clear indication from the nature of the subject matter that the good faith standard was intended.").

I thus see no reason to venture on our own -- without the benefit of a single citation to any New Jersey precedent by either party to this litigation -- to predict how the highest court of a state outside our Circuit would resolve that question. Rather, it seems to me more appropriate to follow the procedure that we often use when confronted with an alternative ground for affirmance that the appellee advances but that was neither asserted below nor addressed by the district court: vacate and remand for further proceedings. See, e.g., Lachance v. Town of Charlton, 990 F.3d 14, 31 (1st Cir. 2021) (vacating grant of judgment as a matter of law, "declin[ing] to exercise our discretion to affirm on any of th[e alternative] bases [for affirmance proffered by the appellees, and] finding it 'appropriate to leave such a matter for the district court to address in the first instance on remand,

especially when the grounds are not fully developed or fairly contested on appeal,' as is the case here." (quoting <u>Yan</u> v. <u>ReWalk Robotics Ltd.</u>, 973 F.3d 22, 39 (1st Cir. 2020))).  That way, the newly raised issue may be given the full consideration that our multi-tiered adjudicative system contemplates.

I therefore respectfully dissent from the decision to affirm the dismissal of the contract claim but otherwise join the decision in full.[32]

---

[32] Even though I do not construe the Revocation Provision to give ABIM the discretion that the majority opinion does, I agree that, for the reasons well stated in the majority's "good faith and fair dealing" analysis, ABIM did not breach the implied covenant of good faith and fair dealing.